IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| STEPHAN BYRD | : | Hon.:_____ |
|     Plaintiff, | : | |
| v. | : | |
| Lt. MATTHEW FINLEY | : | 42 U.S.C. §§ 1983, 1985, Bivens |
| Det. MICHAEL FRANSKO | : | Action, Civil Rights Act, N.J. |
| Det. CRAIG SCARPA | : | Stat.Ann§10:6-2, Human Rights, |
| Det./USMS NICHOLAS STERCHELE | : | and Tort Complaint for |
| Det. GREGORY PACITTO | : | Consolidation |
| Officer. MICHELLE PEDULLA | : | |
| DMCA DAMARIS CORTES | : | Joint Complaints |

Det. MICHAEL SAUVIGNE

Det. KEN GONZALEZ                    Jury Trial Demanded

Det./Sgt. MICHAEL DINATO

Prosecutor MICHAEL OSTROWSKI

SPECIAL AGENT JOSEPH FUREY

SPECIAL AGENT MICHAEL SCIMECA

SPECIAL AGENT JASON DIJOSEPH

SPECIAL AGENT MARK GILLEN

SPECIAL AGENT BRADLEY COHEN

SPECIAL AGENT MONICA CUETO

SPECIAL AGENT CARRIE BRZEZINSKI

A.U.S.A. COURTNEY OLIVA

A.U.S.A. SARA ALIABADI

MUNICIPALITY OF VINELAND NEW JERSEY

CUMBERLAND COUNTY MUNICIPALITY NEW JERSEY

HONORABLE JUDGE ROBERT B. KUGLER

The Daily Jornal Vineland New Jersey

Deborah M. Marko

JOHN and JANE DOES 1-100

RECEIVED

FEB 1 5 2019

AT 8:30_____

WILLIAM T. WALSH, CLERK

(1)  Comes now, natural born citizen of the United States of America, and of the State of New Jersey by permanent domicile, aggrieved in the unlawful restraints of citizen personal Civil Rights of Liberties protected under the United States Constitution and Bill of Rights.

(2) Plaintiff Stephan Byrd a Citizen of the United States, was restrained of his Constitutional safeguards by individuals acting under the color of law(s), oath of office; Plaintiff sue out these complaints consolidated due to a 'symbiotic' venture, resulting in civil, human and constitutional rights violation(s). Plaintiff request urgent expedited treatment.

(3) Plaintiff Stephan Byrd, sui juris, citizen of New Jersey and grievant in the above captioned matters, herein Plaintiff, makes formal civil, human, and constitutional tort complaints upon defendant(s) mentioned hereinbefore, acting under the color of law(s); to enter into official court record of the above captioned case, certifed documentary evidence of the foregoing, and to provide formal notice to all interested parties of the same.
(4) Plaintiff, being natural-born citizen of the United States, and specifically citizen of New Jersey by permanent life long domicile, is aggrieved in the Kidnapping, malicious arrest, false arrest, malicious prosecution, false imprisonment, abuse of process, illegal search and seizure, fabrication of evidence, perjury, subornation of perjury, falsifying documents, planting evidence, tampering with evidence, tampering with witness, defamation of character, illegal detention, failure to disclose exculpatory evidence, unlawful restraints of Plaintiff civil, human, and

(2)

constitutional rights; without fundamental fairness, and equal
protection of the law(s) by individual's acting on their own,
acting under the color of law, and acting under oath of office.
(5)Plaintiff is aggrieved by the abuse of power, a judicial conspiracy,
official corruption and authority by individuals known and unknown
pretending to exercise the power and authority vest under the
United States Constitution, Bill of Rights, New Jersey Constitution,
and specifically the Fourth, Fifth, Sixth, Eighth and Fourteenth
Amendments to our United States Constitution or Judge sitting
in term of the Federal District Court of the United States, executing
power and authority under the color of law(s); or under the oath
of office. Plaintiff sues out this civil rights, human rights and
constitutional tort complaint(s) as set forth in the particulars
upon the above face of this moving application(s), and in support
do state:

(6) I, Stephan Byrd, citizen, residing in the State of New Jersey
by way of this Joint civil, human, and tort complaint(s) states
infra;

## INTRODUCTION

(7) This case arises out of Vineland New Jersey where the plaintiff
was framed with a conspiracy to commit attempted murder, possession
of a handgun and possession of a weapon by a felon, on July 25,
2014. The Plaintiff was being investigated by a multi-jurisdictional
task force consisting of numerous agencies of different jurisdictions
all working within a symbiotic relationship in the summer of 2014
by way of the State of New Jersey. The plaintiff was framed as a
pretext to kidnap the plaintiff and place him in a investigative
detention until Federal Agents could acquire his possessory items,
i.e., his vehicle and phone, and were able to charge the Plaintiff
in Federal Jurisdiction with bank robberies.

## JURISDITION and VENUE

(8) This action(s) have been brought for pecuniary, compensatory, injunctive, declaratory, and injuries, inter alia, seeking remedy and redress, resulting from [any and all] violation(s) and personal losses, caused and continuing by the Constitutional--tort, prima face tort, caused by; gross negligence, and wrongful acts and/ or omissions caused and continuing either directly, or indirectly by any defendant, private, associated individual, or employees acting for the State and Federal Government, and its agencies, its subdivisions acting privately or under color of laws, or oath of office, or within the scope of its office or employment, and while engaged in or after training and duties, including, but not limited to persons acting under the color of law(s), acting on behalf of City, State, and Federal Agencies in an individual and official capacity, temporarily or permanently in the service of New Jersey and the United States, whether with and without compensation, and any officials and employees of the City, State, Federal prosecutorial agent(s), in that the grievant plaintiff "did not" by misconduct or neglect cause or bring about his own kidnapping, procedural and substantive due process violations, illegal search and seizure, malicious prosecution, nor captivity inter alia....

(9) The Plaintiff seeks remedy for civil and human rights violations, compensatory damages, punitive damages, declaratory relief, and injunctive relief, in conjunction to seeking all attorney's fee, i.e., [If they shall come about].

(10) Jurisdiction of the court is further invoked pursuant to
28 U.S.C. § 2513 (a) (1) (b) (2), 42 U.S.C. § 1981-1988; 5 U.S.C.
§ 702-706, Civil Rights Act of 1964, 28 U.S.C. § 1331, 28 U.S.C. §
1343 (a)(1)(2)(3)(4); 28 U.S.C. § 2201-2202, 18 U.S.C. § 3182-3185,
28 U.S.C.A. § 1367; 28 U.S.C. § 2679 (b)(1);

(11) Additional jurisdiction in this matter is invoked pursuant to
Federal Tort Claims Act, Article III of the Constitution; 18 U.S.C.
§ 241-242, Title VII of Civil Rights Act of 1964; and the Bill of
Rights for the violations of the Plaintiff's civil and human righ
inter alia, as secured by city, state, and federal statutes, and
the United States Constitution , and Constitution of New Jersey.
Plaintiff further invokes the pendent and supplemental jurisdictions
of this court to decide claims arising under State law(s).
Plaintiff assert that the defendant(s) do not have immunity for
directly, and indirectly violating the civil rights of plaintiff
citizen. This court is, therefore, vest with jurisdiction over
all claims asserted hereinafter.

(12) Since Honorable Judge Robert B. Kugler who sit in the Eastern
District of Camden New Jersey has been named as a defendant in
his individual capacity based on your Honor making rulings that
violated the Plaintiff due process while he was without jurisdiction,
and his credibility, personal and financial interests are at issue,
reallocation from the Eastern District vicinage to the Northern
District vicinage in Newark New Jersey is requested here. [See.,
Judicial Conference of the United States, Committee on Code of
Conduct for United States Judges, Compendium of Selected opinions
§ 3.6-6 (1)(b) 2017, See., also U.S.C. § 455.

(13) Also executive Judicial Nominee, Assistant United States

(5)

Attorney Sara Aliabadi is named as a Defendant and is located in
the same Eastern District vicinage as Honorable Judge Kugler.
Both A.U.S.A. Sara Aliabadi and A.U.S.A. Courtney Oliva participated
in the multi-jurisdictional task force conspiracy against the
Constitutional, Human and Civil rights violation against the
Plaintiff. It is also clear and unequivocal  proof that Honorable
Judge Kugler and A.U.S.A. Sara Aliabadi has taken the initiative
to attempt to cover up and conceal the egregious, flagrant misconduct
of the Federal Agent, State Law Enforcement and Locals within
this taskforce. Further violating the due process rights of the
Plaintiff as the evidence in support of these allegations are
clear, weighty, and concise.

## Parties

(14) The Plaintiff herein Stephan Byrd , who is 45 years of age,
is at all times mentioned herein, is a citizen by permanent domicile
of the State of New Jersey and the United States of America, and
is a competent adult.

## Defendant(s) By Reference

(15) Defendant(s) are private-citizen'(s), judicial officials,
special agents, acting under the color of laws and oath of office,
inter alia; Vinelan Police Department of New Jersey consist of the
following law enforcement personnel, Lt. Matthew Finley, Detective
Michael Fransko, Detective Craig Scarpa, Detective/United States
Marshal Service Nicholas Sterchele, Detective Gregory Pacitto,
Supervisor of Records Officer Michelle Pedulla, and DMCA Damaris
Cortes; North Brunswick Police Department of New Jersey consisted
of Detective Michael Sauvigne;

(6)

Franklin Township Police Department consisted of Detective Ken
Gonzalez; Cumberland County Prosecutor Office consisted of
Detective/Sgt. Michael Dinato and Prosecutor Michael Ostrowski;
Federal Bureau of Inspection(FBI) consisted of Special Agent
Joseph Furey, Special Agent Michael Scimeca, Special Agent Jason
Dijoseph, Special Agent Mark Gillen, Special Agent Bradley Cohen,
Special Agent Monica Cueto, Special Agent Carrie Brzezinski;
Assistant United States Attorney Courtney Oliva and Sara Oliabadi;
Municipality of Vineland New Jersey; The Daily Journal Vineland
New Jersey, Deborah M. Marko; Cumberland County Municipality of
New Jersey; John and Jane Does 1-100; Honorable Judge Robert B.
Kugler.

(16) Defendant(s) (1-100) known and unknown worked as Local, State,
and Federal Officials, acting under color of law, or oath of office,
inter alia, either as police officer, special agent, supervisor(s),
prosecutor(s), Judge, or subordinate(s) entities to the contemporaneous
filing of civil rights complaint(s) herewith;

(17) Defendant(s) (1-100) so acting under color of law and oath of
office, known and unknown at all times while conspiring to deprive
plaintiff of his civil, human and constitutional rights relevant,
were employed as law enforcement and took an oath to uphold the
constitution;

(18) Defendant(s) (1-100) known and unknown under oath to uphold
the Constitution and Bill of Rights at all times engaged (ab initio)
and continues, were employed, or contracted as employees of law
enforcement, or held a position to uphold the laws and the
Constitution, are defendant(s) "privately", or for the city, state,
and government. Each and all defendant(s) are being sued in an

(7)

individual capacity and in their official capacity.

(19) All of the unlawful and unconstitutional acts of defendant(s) while acting within the scope of their official duties, and as defendant(s) acted rather local, state and federal governmental exercise abuse of power and authority under the color of state and federal laws;

(20) The defendant(s) acted as a private individual, organization, agency, department, subdivision of the city, state, and federal government, and authorized to perform all powers and authority privately as an organization, agency, department, and its subdivision of the city, state, and federal government, or it's privately;

(21) The defendant(s), herein and John and Jane Doe 1-100, are fictitiois names of any and all other individuals, entities, privately, employees, special agents, agents, subdivisions, whom rather directly and indirectly participated in any way in the conspiracy to exercise fraud on the court, kidnapping, malicious arrest, malicious prosecution,False imprisonment, false arrest, abuse of process, illegal search and seizure, fabrication of evidence, perjury, subornation of perjury, falsifying documents, planting evidence, tampering with evidence, witness tampering, defamation of character, illegal detention, failure to expose exculpatory evidence, unlawful restraints of Plaintiff Civil, Human, and Constitutional rights, pain and suffering, deliberate indifference to the Constitution and Bill of Rights or to the Plaintiff Civil Rights of personal liberty.

(22) Defendant(s) were responsible for the hiring, training, super-vision, and retention of the defendant(s);

(8)

were also responsible for the police reports, communications of the
false anonymous tips, witness  and information[s]: were responsible
for the reliability of the falsified and embellished information
and evidence executed upon plaintiff[s], were responsible for re-
liabilty of the fabricated embellished, and fraudulent exercise
of agency standard operating policy and procedures executed upon
plaintiff; Were responsible for the reliability of anonymous tips,
informations, informant, rough notes, agency reports, and evidence
utilized at any stages for agency or departmental purposes, and
responsible for the reliabilty of all materials transmitted from
department to department executed upon plaintiff; were responsible
for anyiiother act[s] and omission, alleged in this joint complaint[s].
(23) All defendants[s] identified, or those to be identified, have
through the utilization of speculation and wagering inter alia,
aided and abetted, conspired to kidnap, illegally arrest and detain
unlawfully, as they conspired to violate the civil and human rights
of Plaintiff exercising constitutional tort inter alia acting under
color of laws, or oath of office of the United States and the State
of New Jersey. The disigration "defendants" refers to all defendants
known and unknown, names and unnamed, including, but not limited to
"John and Jane Does 1-100," as incorporated hereinafter.
                              FACTS
(24) As earlyiias documentary evidence will point out , the Plain-
tiff was the subject of a multi-jurisdictional task force invest-
igation around and about July 9, 2014 in the State of New Jersey.
This investigation started with violations of New Jersey State
Statues.
(25) On July 28, 2014, the Plaintiff was arrested by the United
States Marshal Service and Vineland Police Department for Attempted

(9)

Murder, Conspiracy, Possession of a Weapon, and Possession of a Weapon by a convicted felon. Unbeknownst at the time, this attempted homicide arrest of Plaintiff was a collective decision made by an ad-hoc task force operation under New Jersey State Statutory Amendments Law. This multi-jurisdictional task force consisted of Vineland Police Department (New Jersey), Federal Bureau of Investigation, North Brunswick Police Department (New Jersey), United States Marshal Service, Hamilton Township Police Department (New Jersey), Franklin Township Police Department (New Jersey), Assistant United States Attorney(s) Camden and Newark New Jersey vicinages, as well as, Cumberland County Prosecutor's Office along with various other agencies as documented evidence will show and as testified to by Special Agent Joseph Furey of the FBI on March 22, 2017 at the evidentiary hearing in Federal Jurisdiction.

(26) This attempted murder conspiracy arrest was made to seem as if it had emanated from the hearsay of a career criminal Chicana Brown, who on July 23, 2014 told authorities that the Plaintiff was involved in the attempted murder conspiracy and was in the assailant's vehicle during the time of the crime.

(27) Now when eye witness Shawn Jones was interviewed on July 25, 2014, he implemented himself and cousin Eric Bailey in this crime, while at the same time informing the Vineland Police Department that Plaintiff Mr. Byrd was not involved in this crime nor was he ever in his vehicle that was present at the scene of the crime. Yet Vineland Police Department secured warrants for the Plaintiff Stephan Byrd on the attmepted murder conspiracy charges and held him in the Cumberland County Jail on July 28, 2014 on a full cash $250,000 bail by a Honorable Judge D'Arrigo.

(28) It is imperative to understand that this team of agencies was

(10)

led and controlled by the Federal Government operating under State Law, i.e., the FBI used Vineland Police Department to arrest the Plaintiff on the conspiracy to commit attempted murder, a subterfuge to collect evidence against the Plaintiff in alleged bank robberies [Federal Crimes], while in violation of the Plaintiff Fourth Amendment right to be free from an illegal arrest, search and seizure. Also in violation of Plaintiff Fourteenth Amendment Due Process rights. This sham to incarcerate the Plaintiff on erroneous State charges allowed the Vineland Police Department to hold the defendant in the Cumberland County Jail, while the FBI stayed hidden in the shadows continuing their investigation into the Plaintiff alleged involvement into bank robberies; all while the Plaintiff remained incommunicado in the Cumberland County Jail.

(29) The Framing of the Plaintiff began to unravel on or about July 9, 2014. Officer Michael Suvigne of North Brunswick Police Department emailed Special Agent of the FBI Michael Scimeca with Plaintiff phone numbers (856-213-7392) and (856-238-8607). Officer Sauvigne asked Special Agent Michael Scimeca to "run these against the info from the tower dumps you have. Hopefully you will get something."

(30) In another Telecommunication that was memorialized, Special Agent Scimeca of the FBI gets a message from Officer Michael Sauvign of North Brunswick Police Department stating, "I can run an off-line DMV check of Stephan Byrd (Plaintiff) vehicle unless you can get results sooner?" His plate is NJ-P37DPX."

(31) On or about July 10, 2014 Special Agent Carrie Brzezinski sent an email to Special Agent Joseph Furey and Special Agent Michael Scimeca informing them that the Plaintiff cell number is subscribed to 469 Foster Avenue, Vineland New Jersey, "which is an address he (Plaintiff) has used. "Special Agent Brzezinski had responded to an email from Special Agent Joseph Furey who had expressed the Plaintiff

(11)

was arrested on June 19, 2014 "in Vineland NJ, and charged with Agg Assault, threaten to kill, unlawful possession of a handgun and persons not to have a weapon... The Police Report shows personal information on Mr. Byrd to include his cell phone which is [856-213 7392]," stated Special Agent Furey. This police report was provided to the Federal Government in order for them to extract personal information of the Plaintiff. So keep in mind it is important to make note of the Plaintiff phone number that is being passed along multiple email strings among all the law enforcement agencies from off this arrest record out of Vineland Police Department, along with the Plaintiff license plate registration [NJ-P37DPX] between dates of July '9, 2014 and July 22, 2014.

(32) Also notice the exposure of the Plaintiff address [469 Foster Ave, Vineland NJ]. This is critical in understanding that as early as July 10, 2014, this group of agencies was aware of the Plaintiff whereabouts and his place of employment from off the JUne 19, 2014 arrest report.

(33) On or about July 11, 2014, Officer Michael Sauvigne of North Brunswick Police Department sent an email to Benanti an Hoibery of the North Brunswick Police Department. In this email, Sauvigne explained that the Plaintiff was arrested on June 19, 2014 for Aggravated Assault and Possession of a handgun by Vineland Police Department. More importantly, Sauvigne detailed that the FBI had additionally begun to run an "off-line" search of his (Plaintiff) vehicle.

(34) New Jersey State Statute 2C:20-25 clearly states that a person is guilty of computer criminal activity if the person purposely or knowingly and without authorization, or in excess of authorization, access any data, data base, obtains, takes, copies or uses any data and finally is or contains governmental records or other information

that is protected from disclosure by law, court order or rule of court.https://law.justia.com/codes/new-jersey/2013/title-2c/section-2c-20-25(July 10, 2018) This statute is in strict compliance with the Federal Drivers Privacy Protection Act of 1994, 18 U.S. Code § 2721-2725, which prohibits States from disclosing personal information contained in motor vehicle record except under certain, specified circumstances. https://www.law.cornell.edu/uscode/text/18/2721 (July 10, 2018)

(35) Recognizing the legitimate concern of motorist that identifying information, such as their home address and social security number not be released indiscriminately to the general public, the Legislature passed section NJ Rev Stat § 39:2-3.4 (2013), which prohibits the disclosure of "personal information about any individual obtained by the DMV in connection with a motor vehicle record.https://law.justia.com/codes/new-jersey/2013/title-39/section-39-2-3.4/ (July 10, 2018) NJSA 39:2-3.3 in turn, defines "personal Information" as "information that identifies an individual, including an individual's photograph, social security number: driver identification number and medical or disability information."https://law.justia.com/codes/new-jersey/2013/title-39/section-39-2-3.3 (July 10, 2018)

(36) As of July 15, 2014, the Plaintiff was not charged with any crime. Likewise, there was no evidence that the Plaintiff violated any law up to this point of this instant matter. So for this multi-jurisdictional task force to be running off -line DMV checks and vehicle searches on the Plaintiff personal information off Vineland Police Department records in or around July 9-15, 2014, they surely were participating in criminal activity to further their motives of investigation.

(37) On or about, July 14, 2014,Special Agent Michael Scimeca emailed
Assistant United States Attorney Courtney Oliva to request a cell
site order for the  Plaintiff cell phone number (856-213-7392) which
was obtained off the June 19, 2014 arrest report from Vineland Police
Department of the Plaintiff.

(38) At approximately 9:53 a.m. on July 15, 2014, Special Agent
Michael Scimeca emailed Officer Michael Sauvigne of NOrth Brunswick
New Jersey Police Department, and ask him to "call when you can, and
I will explain the plan"! Evidently this shows in the telecommunnications
that a plan was in the works by the FBI, Vineland Police Department,
and North Brunswick Police Department, and others, to violate the
Constitutional rights of the Plaintiff, all the while when there is
clear and convincing evidence the Government was illegally running
"off line" DMV checks of the Plaintiff personal information stored
in a governmental database as well as an "off line search" of the
Plaintiff vehicle, while in the possession of the Vineland Police
Department.

(39) At approximately 11:18 a.m. on July 15, 2014, (18) minutes after
Michael Sauvigne of NBPD emailed Special Agent Michael Scimeca and
Brezezinski, Vineland Police Department Supervisor of the Records
MichelledPedulla emailed Special Agent Michael Scimeca a pdf attachment.
(40) Moreover this would only be the initiation of the egregious
misconduct and criminality against the Constitutional rights of the
Plaintiff that was to come at the unclean hands of this multi-juris-
dictional task force. For on July 16, 2014, an opportunity would
present itself for this task force to charge the Plaintiff with a
false conspiracy to an Attempted Homicide Charge, that would place
the Plaintiff in a investigative detention, restricting his liberty
interest all the while the Federal Government would investigate the
bank robberies they were so intent on Charging the Plaintiff with.

(14)

(41) On or about July 16, 2014, an Attempted Homicide occurs in Vineland New Jersey at 1616 Pennsylvania Avenue, where a Eric Bogan was allegedly shot by 3 black male subjects.

(42) On the Call Detail Report of the Vineland Police Department for the Attempted Homicide of July 16, 2014, the vehicle of the Plaintiff is listed at the scene at 13:56 hours, bearing NJ Registration P37-DPX, 2008 Honda Accord. Yet the Plaintiff is identified along with his vehicle on video at his place of employment at Belco Biotechnology and Glass, Inc., 340 Edrudo Road, Vineland, NJ 08360.

(43) Also the phone number [856-213-7392] along with the license plate is listed in this "Call Detail Report". The timestamp that is located next to the Plaintiff vehicle on this document, i.e., 13:56 corrosponds to the initial call received by Kimberly Mazzola ("MAZZOLA") at the time of the shooting. Yet Plaintiff car description doesn't come through the call as all other cars are matched to the times they were called in. However Plaintiff vehicle and phone number still is on this document as being at the scene of this crime. Moreover, Chicana Brown is the only person ever to implicate the Plaintiff but this interview of Chicana Brown doesn't take place until July 23, 2014, approximately 8 days after Mr. Byrd vehicle registration and phone number is placed on the "Call Detail Reprot" contemporaneously to the events of July 16, 2014. To make matters worst, Chicana Brown never says anything about the Plaintiff vehicle or phone number in the interview. Plainly, law enforcement was passing the Plaintiff phone number and vehicle registration number amongst each agency from July 9, 2014 until July 15, 2014. Logically, this would be the only means to provide a nexus for Plaintiff vehicle registration and old phone number being placed on this specific document.

(15)

(44) There is no doubt law enforcement was framing the Plaintiff under New Jersey State Law on July 16, 2014, way before Chicana Brown came to the police station on July 23, 2014, and was coerced and promised a reward to say the Plaintiff was there. This was done under the color of State Law to facilitate a Federal Bank robbery investigation, that was ongoing under Federal Jurisdiction.

(45) Two problems are presented here: (1) the vehicle was attributed to the Plaintiff by placing it on the " Call Detail Report" of the Attempted Homicide. The Plaintiff vehicle was unjustifiably entered on this document to give the impression the Plaintiff was involved in this crime and to provide corroboration in this matter, to Chicana Brown statement that was later to come.

(46) To the Chagrin; however, of Vineland Police Department and the FBI, the Plaintiff and his vehicle were at his place of employment at the time of the shooting. This fact was attested to by Officer Graig Scarpa of Vineland Police Department who validated the Plaintiff claims that he was never involved in the Attempted Homicide. However, the Vineland Police Department hid this exculpatory evidence due to the fact that they were setting the Plaintiff up on the Conspiracy to commit Attempted Murder.

(47) The second problem presented here is that special agent Scimeca had access to the arrest file of the Plaintiff of June 19, 2014 and would have known the Plaintiff was working when he had allegedly been involved in the Attempted Homicide in Vineland. The FBI failed to recognize this exculpatory evidence and continued its prosecution of the Plaintiff. Moreover, the Vineland Police Department should have corroborated Chicana Brown story before issuing an arrest warrant.

(48) On or about July 22, 2014, Special Agent Michael Scimeca of the FBI emailed the Assistant United States Attorney the "off line"

(16)

information he obtained form the New Jersey Motor Vehicle Commission, stating that a 2008 Silver Honda Accord bearing NJ Registration is registered to Stephan Byrd (Plaintiff) having a date of birth of December 12, 1974. Preceding this email; however, Special Agent Michael Scimeca received an email from Franklin Township Police Officer Nicholas Martinez ("MARTINEZ") with an attachment referring to the Plaintiff's vehicle having NJ Registration P37-DPX.

(49) Further on July 22, 2014, Nicholas Sterchele of the United States Marshal Service Regional Task Force (Atlantic City Division) informed Special Agent Joseph Furey of the FBI, "If a warrant for the suspect arrest is generated, the US Marshal Service will help. Nicholas Sterchele correspondingly informs Special Agent Furey that Detective Michael Fransko of Vineland Police Department is the "initial" on the bank robberies out of Vineland. Detectective Michael Fransko was also one of the first responders to the conspiracy to commit Attempted Murder in Vineland on July 16, 2014.

(50) Also on or about July 22, 2014, Again Nicholas Martinez sends an unknown fact file in relation to Plaintiff vehicle to Special Agent Michael Scimeca.

(51) In this string of emails on July 22, 2014, Special Agent Michael Scimeca emailed Assistant United States Attorney Courtney Olivia and ask if the Government can get a GPS tracking warrant for the vehicle at this point. Special Agent Scimeca relates, "The car is registered to him and can be attributed to him through the assault victim on June 19, 2014,". For edification, there is not one scintilla of evidence that indicates the assault victim identified the complaints vehicle.

(52) On or about July 23, 2014, Chicana Brown provided a statement to Vineland Police Department Officer Gregory Pacitto, suggesting that Eric Bailey and Shawn Jones came to her house after the July 16,

2014 shooting. These were the actual suspects of the crime. During this 12 minute interview, Chicana Brown allegedly told police that the Plaintiff Stephan Byrd provided the gun that was used in the shooting and he was in the backseat of the vehicle that was used in the crime. However, during this interview Chicana Brown asked Officer Gregory Pacitto for her reward and also reminds him that she is the criminal not her sister who truck was used during the shooting. Furthermore Officer Gregory Pacitto never reports these key facts in his August 5, 2014 supplemental report; there was never a mention of Chicana Brown criminal history or her asking to be rewarded. Most importantly Gregory Pacitto never once in this supplementary report of August 5, 2014 mention that Chicana Brown had in fact lied and created this entire story. This was mainly due to the fact that Chicana Brown was only at Vineland Police Department at the behest of this multi jurisdictional task force, for reasons of providing a false statement on the Plaintiff that would lend support to his vehicle being put at the scene of this crime 8 days prior through the "Call Detail Report" of the shooting.

(53) At that time, the question remained, "How did Stephan Byrd vehicle and phone number that was being passed through the email from off the June 19, 2014 arrest report out of Vineland Police Department show up on the "Call Detail Report" 8 days prior to Chicana Brown July 23, 2014 interrogation statement that was coerced and payed for".Note: Chicana Brown never mentioned the Plaintiff vehicle or phone number at no time.

(54) Also on July 23, 2014 directly after Chicana Brown provide Vineland Police Department with the coerced statement, Ms. Brown is arrested at Walmart in Audobon New Jersey for Shoplifting.

(18)

(55) Considering subsequent video and time records that place
the Plaintiff at his place of employment at the time of the
aforementioned attempted murder, it was apparent that Chicana Brown
had fabricated her statement to authorities so that a reward was
forth coming as promised by Vineland Police Department.  Ms.
Brown was a coerced pawn for this ad-hoc task force to have justification
for arresting the Plaintiff and detaining him until the Federal
investigation was complete. Which only to add to this task force
woes, Chicana Brown swore out an affidavit to investigator Kerry
Tucker, who is the Plaintiff court appointed investigator in the
criminal matter involving the bank robberies. Ms. Brown stated
and avowed that she was coerced to provide the statement that she
did to Vineland Police Department concerning the shooting and the
Plaintiff being involved.

(56) Interestingly, the FBI is in Vineland on July 23, 2014 and
was watching the Plaintiff vehicle according to the telecommunications.
The FBI applied for a GPS warrant for the Plaintiff vehicle on July
23, 2014. They informed Assistant United States Attorney Courtney
Oliva that they located the Plaintiff (Stephan Byrd) vehicle in
Vineland, New Jersey; thus further proving that Vineland and the
FBI were colluding.

(57) Now on or about July 24, 2014 according to the telecommunications,
Special Agent Michael Scimeca of the FBI .emailed Detective Michael
Fransko of Vineland Police Department and informed him that an
attempted murder warrant may be coming down out of Vineland Police
Department and if it does this is what they need to seize off the
arrest, i.e., his cell phone, vehicle, residence, computer, clothes,
etc. Note: Special Agent Michael Scimeca stated in this very same

(19)

email that although his phone is active (856-213-7392) it has had
no activity since June 25, 2014. So, how is it that this particular
phone number from the June 19, 2014 arrest is placed on the Vineland
Police Department "Call Detail Report" for the shooting, if according
to the FBI Agent Michael Scimeca, the cell number had been inactive
since June 25, 2014. This also shows that this task force placed
the number on the "Call Detail Report" for the shooting prior to
July 24, 2014 when the FBI first realized that the Plaintiff was
no longer using that number. This is why it became urgent in the
same email from Special Agent Michael Scimeca to Detective Michael
Fransko of Vineland Police Department on July 24, 2014, to seize
the Plaintiff phone at the arrest. The FBI needed to know the new
number the Plaintiff was currently using in order to secure Cell
Site Location Information from the Plaintiff phone as would prove
to be the case based on documented facts.

(58) If Stephan Byrd is being arrested on State Charges out of Vineland
New Jersey, then why is the FBI informing Vineland Police Department
that a warrant is coming down and what needs to be seized... Moreso
why is FBI Agent Michael Scimeca informing Detective Michael Fransko
of Vineland Police Department of the warrant and much needed seizure,
when in fact Detective Fransko is one of the first responders to
the attempted murder crime scene on July 16, 2014. Also Detective
Fransko was intricate in the attempted murder investigation as
he had conducted several interviews with witness in the area of
the attempted murder crime scene.

(59) This is clearly a orchestrated conspiracy of criminality and
illegal activity being forged against the Civil, Human and
Constitutional Rights of the Plaintiff at the time. Also how

is FBI Special Agent Michael Scimeca so knowledgeable of the
attempted murder when the first statement provided to authorities
that implicates the Plaintiff in this crime is on July 23, 2014,
just one day prior to the Federal Government seizure request.
Now the joint law enforcement meeting to make the collective decision
to charge the Plaintiff with this malicious arrest of attempted
murder was on July 25, 2014 according to records and testimony by
Special Agent Joseph Furey of the FBI. Yet one day prior it is the
FBI who is directing the Vineland Police Department on what needs
to be seized in regards to property belonging to the Plaintiff.
This request is without a warrant, pending charge, jurisdiction or
a proper justification besides a general investigation of possibilities.
What truly shows that a conspiracy is in the works amongst these
agencies moreso than anything else between dates of July 16, 2014
and July 25, 2014 , is why would Vineland Police Department seize
the Plaintiff vehicle for the Federal Government investigative
purposes, when this same vehicle is on the "Call Detail Report" to
the conspiracy to commit attempted murder, placing the nexus between
the Plaintiff and the crime scene needed for the justification of
the Vineland Police Department active warrant for the Plaintiff.
(60) On July 25, 2014 Special Agent Joseph Furey stated in an email
to various Federal Agents that it was a collective decision to arrest
the Plaintiff on the attempted murder. Special Agent Furey writes,
"this will get him off the streets and will give us a chance to
execute search warrants, get his phone and continue the criminal
investigation of the robberies." As one can see and construe, the
FBI is controlling every step of the state case to generate evidence
for their Federal bank robbery investigation. In other words,

Vineland Police Department agreed to use the State color of law
to falsely arrest and illegally detain the Plaintiff in an investigative
detention for the Federal Government, until evidence was developed
to either exclude the Plaintiff of the bank robberies or charge him
accordingly.

(61) On July 25, 2014 after Special Agent Joseph Furey sends his
email through the bureau of Federal agents in relation to the
collective decision to place the Plaintiff on the attempted murder
arrest, ASAC Bradley Cohen of the FBI and Special Agent Jason
Dijoseph exchange emails within the bureau about the collaboration
of this multi-jurisdictional task force.  Special Agent Jason Dijoseph
writes in response to Special Agent Furey email;

    "After reading this several times, to make sure I have read
it correctly because I was in utter disbelief.

    So its an FBI investigation and we give the warrant to the USMS?
Are you kidding me. Please feel free to call me and explain it tome.
There is no investigative benefit to have the USMS to conduct the
arrest.

    FBI agents got a search warrant to GPS, exposing FBI agents
but give the arrest warrants to the USMS. The arrest is a tool to
further the investigation and we give that critical portion to the
USMS? Should I remind you about how this exact situtation has played
out in the past? Serial bank robber in FTRA and HQ city and the USMS
were tracking the phone under questionable circumstances? and as
they were tracking, the fugitive robbed a bank and deputy USMS
ran into the bank showing the victim teller a photo of the robber,
taint the witness??? Or when the USMS arrested a fugitive on another
FBI case on the front porch and recovered the gun in the second story

(22)

back bedroom, then weapon being thrown out and the case being dismissed??? Its an FBI investigation with a local warrant. Have FBI agents conduct the arrest, collect the evidence and conduct the post arrest interview. We have a national MOU between the FBI and USMS that covers this situation. Even when it should be a USMS primary, when there is a FBI case and local warrants the FBI is the primary."

(62) Special Agent Bradley Cohen returns a email to Agent Jason Dijoseph defending this collective decision and the "plan";

"Let me first nip this in the bud...immediately! Without knowing the dynamics, logistics, and partnerships with specific territories, we should not question unless there's a matter of life safety. Familiar with this territory and the fine working relationships gathered at ACRA, the acting SSA along with his partners, have discussed an investigative plan of action and have agreed for certain parts to be distributed among the "investigative team." If there is an opinion, and all are part of the investigative team on a specific case, then the matter should be discussed among the management team and not the masses as only some are fully aware of the investigation and dynamics. In this matter, A/SSA Furey informed mgt. with an update, he and his team (locals, state, feds) have agreed to delegated tasks, and each step is coordinated among his AOR team. The warrant obtained was by the local police, and their detectives serve on the task force and are confident/aware of what needs to be gathered for their local investigation. Once an arrest is made, the detectives are going to coordinate with the "investigative team" for the next plan of action. This AOR investigation team is "comfortable" with the plan and are carrying it out as discussed/collaborated.

Now from my past experiences, and trust me, I've had my fair share with th...

(23)

with the Marshals.... there are some areas that work extremely well
with the Marshals and the local task force, while others not so much.
Again, ACRA feels confident with their investigative team and we
should not question.

   I respect the opinions of the entire NK team, but this was not
the way moving forward and to include EVERYONE on this email. If
there is some sort of safety concern or specific piece related to
THIS investigation which should be a concern, then the mgt investigative
team, coordinator, and ASAC should discuss. Additionally, ALL emails
are discoverable, and if this was ever to be brought up by the defense
if something went wrong, our conflict and calling out the USMS would
be embarrassing for the Bureau. Let's keep it to tel cals if something
urgent needs to be discussed. Otherwise, this matter concludes here
and ACRA was providing NK with a situational awareness message."
(63) The USMS "Nicholas Sterchele" was sent by the FBI to arrest and
seize the property of the Plaintiff on the attempted murder arrest
for the FBI. This goes back to the email of Nicholas Sterchele (USMS)
informing Special Agent Joseph Furey on July 22, 2014 that if his
office generates a warrant, then the U.S.M.S. will help. Also keep
in mind that Nicholas Sterchele is also a Detective out of Vineland
Police Department. Also on July 25, 2014 Special Agent Michael Scimeca
confirmed that himself and Special Agent Joseph Furey are in agreement
with the referenced plan of placing the Plaintiff on the conspiracy
to commit attempted murder in Vineland New Jersey.

(64) Warrant's for the Plaintiff were then issued on July 25, 2014
alleging the Plaintiff complicity in the Vineland shooting of Bogan
on July 16, 2014. Remeber prior to these warrants on July 25, 2014
Remember prior to these warrants on July 25, 2014, the main accomplice
Shawn Jones is questioned and denies everything Chicana Brown stated

(24)

about Mr. Byrd being present, giving someone a gun and being in the back seat of his vehicle. It is important to keep in mind that Officer Gregory Pacitto in his Supplemental Report of the Attempted Murder stated that he didn't believe Shawn Jones.

(65) Moreover, on July 25, 2014 after the meeting North Brunswick New Jersey also generated a warrant for Robbery of the Plaintiff to a replica bail of the Vineland Charges of $250,000 cash no 10%. This was for safety reasons if the attempted murder charge didn't hold the defendant in the investigative detention. To prove this line of argument, to date, Mr. Byrd has never been formerly charged or served with these North Brunswick, New Jersey charges or been before no Judge to answer for them; yet he has been indicted absent no first appearance whatsoever.

(66) The charges that emanated from Vineland Police Department re-lating to the Attempted Homicide was never about Dric Bogan being shot, but a ruse to collect and seize the Plaintiff vehicle and phone so that the items could be used in Federal Jurisdiction as evidence in a bank robbery investigation. This ad-hoc task force of multiple jurisdictions operating under New Jersey State law knew the Plaintiff was innocent on the Attempted Murder Conspiracy, so they never had no intention to corroborate Chicana Brown statement when they them-selves were responsible for manufacturing the statement of the Plaintiff being involved in this horrific crime. In fact, what lends support to this argument is that the Vineland Police Department clearly ignored the statement of one of the actual assailants, Shawn Jones, who implicated himself and his cousin, Eric Bailey, and told the Vineland Police that the Plaintiff was not at the scene of the shooting, not in Jones vehicle nor did the Plaintiff provide anyone with a gun.

with a gun. Moreover, Shawn Jones denied that they ever even went to Chicana Brown home after the events of July 16, 2014.

(67) Officer Gregory Pacitto of Vineland Police Department who is the initial on the conspiracy to commit Attempted Murder, typed his name ("PTL. G PACITTO") on the Certification for Warrant/Complaint W2014-002612 and W2014-002613 against the Plaintiff on July 25, 2014 for State Statute Crimes that allegedly occurred in the City of Vineland, New Jersey, according to the sworn affidavit of Investigator Kerry Tucker. Investigator Tucker found no contemporaneous documentation to determine if Pacitto was the actual complainant that provided a false probable cause or certified the complaint/warrant against the complainant. Both complaints were made using NJ State form (CDR-2).

(68) On the Warrants/Complaints for the Plaintiff, Damaris Cortes, the Deputy Municipal Court Administrator at Vineland Police Department (DMCA) asserts "Probable cause is found for the issuance of this complaint". We know from prior testimony in this instant case that probable cause was allegedly found and issued telephonically. Also according to Officer Gregory Pacitto Supplementary Report.

(69) However, Investigator Kerry Tucker found there are no Statements/ Affidavits of probable cause written or oral that exist for the afore-mentioned Warrants/Complaints against the Plaintiff. Investigator Tucker confirmed this through Michelle Pedulla, Supervisor,Vineland Police Department Records Office. Ms. Pedulla Swore Out Affidavits. Also Officer Supervisor Triantos of Vineland Police Detective Bureau and the Records Clerk at Cumberland County Criminal Division.

(70) Rules governing the Courts of the State of New Jersey, Rule 3:2-3 cleary state,"(b) issuance of and Procedures for an Arrest/Warrant when law Enforcement Applicant is not physically before the Judicial Officer, a judicial Officer may issie an arrest warrant on sworn oral

testimony of a law enforcement applicant who is not physically present. Such sworn oral testimony may be communicated by the applicant to the judicial Officer by telephone, radio or other means of electronic communication. The Judicial officer shall administer the oath to the applicant. Subsequent to taking the oath, the applicant must identify himself or herself, and read verbatim the Complaint/Warrant (CDR-2) and any supplemental affidavit that establishes probable cause for the issuance of an arrest warrant. If the facts **necessary to** establish probable cause are contained entirely on the Complaint/Warrant (CDR-2) and/or Supplemental Affidavit, the judicial officer need not make a a contemporaneous written or electronic recordation of the facts in support of probable cause, If the law enforcement Officer provides additional sworn oral testimony in Support of Probable Cause, the judicial officer shall contemporaneously record such sworn oral testimony by means of a recording device, if available: otherwise adequate notes summarizing the contents of the law enforcement applicant's testimony shall be made by the judicial officer. This sworn testimony shall be deemed to be an affidavit, or a supplemental affidavit, for the purpose of issuance of an arrest warrant. An arrest warrant may issue if the judicial officer is satisfied that probable cause exists for issuing the warrant. On approval, the judicial officer shall memorialize the date, time, defendants' name, complaint number, the basis for the probable cause determination and any other specific terms of the authorization. That memoralization shall be either by means of a recording device or by adequate notes.

https://www.judiciary.state.nj.us/attorneys/assets/rules/r3-2.pdf
(July 10, 2015)

(71) Based on all the information presented, it is evident Officer Gregory Pacitto provided sworn oral testimony in support of probable

cause against the Plaintiff as the Complaint/Warrants are deficient of any probable cause contained entirely on the complaint warrant or supplemental affidavit. It is also evident that no police official or records custodian in this cause is able to provide any contemporaneous record of "such sworn oral testimony "or" adequate notes summarizing the contents of the law enforcement applicant's (Gregory Pacitto) testimony.

(72) An interview with detective Lieutenat Steven Triantos of Vineland Police Department on Wednesday, May 9, 2018 at 10:41, By Investigator Kerry Tucker revealed no such recording took place of Gregory Pacitto on July 25, 2014, nor is he aware of or has access to any memorialization by Damarius Cortes to document the facts of Pacitto in support of probable cause as required by NJ Court Rule 3:2-3(b). When asked, by Kerry Tucker (Investigator)"Since there are no recordings or notes of the testimony or probable cause, how am I to know such testimony took place? Triantos politely responded, " I guess you wouldn't. Now I understand what you are getting at with all your request."

(73) These warrants from Vineland Police Department were a collective decision amongst the following agencies; FBI, Vineland Police, North Brunswich Police, Hamilton Police, Franklin Twp. Police and the United States Marshal Service. This joint meeting was held earlier in the morning on July 25, 2014 at the Vineland Police Department. It is important to note that the warrants issued is not signed by Judge D'Arrio but instead Damaris Cortes signed the Judge name for probable cause.

(74) Special Agent Joseph Furey sends an email on July 25, 2014, which states in part, " A meeting was held at the Vineolands Police Department again this morning. It was collectively decided that Byrd (Plaintiff) should be charged along with Jones for the shooting. This will get

(28)

him off the street and will give us a chance to execute search warrants to get his phone and continue the criminal investigation for the robberies." There is no doubt of the meaning of this email. The FBI is clearly and unequivically using this framing of conspiracy to commit attempted murder, to further their investigation into the bank robberies as well as to collect the Plaintiff propery possessions off the arrest.

(75) Later on, July 25, 2014, Special Agent Dijosepʰh responded to Special Agent Furey email and boldly states "After reading this several times, to make sure I have read it correctly because I was in utter disbelief." SA Dijoseph further avowed, "Its an FBI investigation with a local warrant, have the FBI agents conduct the arrest, collect the evidence and conduct the post arrest interview." We note, SA Furey testified in Federal Jurisdiction on September 28, 2017, that Special Agent Dijoseph thought the warrant was local for Bank Robbery not Federal. However as was stated previously, Special Agent Dijoseph knows this is a state warrant for attempted homicide for the simple fact he says he'd read Special Agent Joseph Furey email over and over The in his own email he says "the arrest is a tool to further our investigation".

(76) On or about July 28, 2014, United States Marshal Service Nicholas Sterchele kept his word and arrested the Plaintiff for the conspiracy to commit attempted murder warrant emanation from Vineland New Jersey. U.S.M.S. Sterchele supplementary Report regarding the arrest, states "The vehicle was towed to Vineland Police Station by JC Towing and secured in the lower garage due to the fact it was used in a separate crime robbery not pertaining to this investigation." In another email from Nicholas Sterchele, he informs Special Agent Michael Scimeca from the FBI that he collected the Plaintiff's cell phoneꞮ"...it was powered off and placed in evidence at the Vineland Police Department.

(77) Once again on July 28, 2014, while U.S.M.S. Nicholas Sterchele
made mention as to why he seized the Complainant's vehicle, the Com-
plainant sat in the Cumberland County Jail on a conspiracy to commit
Attempted Murder. Unfortunately, Honorable Judge Kugler has joined
into the conspiracy and has ignored these facts in the Federal Juris-
diction for the bank robbery charges with the purpose of shielding the
misconduct and framing of the FBI and their subgroup of Agencies. In
this instant matter, the Plaintiff possessions were searched and seized
by the United States Marshal Service and directed by the FBI on conjured
attempted murder charges in Vineland N.J. as a tool to investigate the
Federal Bank Robberies in which the plaintiff was eventually charged
on September 30, 2014

(78) Also on July 28, 2014 during the arrest and email exchange between
Nicholas Sterchele and the Federal Government, Assistant United States
Attorney Courtney Oliva is contacting the FBI: specifically... Special
Agent Michael Scimeca, " Will you be able to get me the phone info
tonight? I have an AM meeting that might delay getting the phone
warrant. Car warrant will be ready tomorrow, though".

(79) The Federal Prosecutor admits that the seizures were done without
warrants and solely for the Federal Government. Remain mindful that
no Federal charges are pending against the Plaintiff on July 28, 2014,
In fact, ther are no warrants and certainly there is no Federal Juris-
diction at this time to acquire any evidence. This clearly shows that
the seizures of Stephan Byrd possessions were seized strictly for the
investigation purpose of the FBI. Not to mention how was it that a
Federal investigation of bank robberies take precedent over a live
active Vineland Police Department warrant for conspiracy to commit
attempted murder. Especially when the Plaintiff vehicle was fabricated
as being at the scene of the crime of July 16, 2014.

(80) These were strategic seizures of the Plaintiff's personal property without search warrants on a malicious arrest. It should be noted: that Plaintiff is not charged with any Federal Crimes until 90 days later.

(81) Addtionally, during this time of arrest for the attempted murder Assistant United States Attorney Courtney Oliva is attempting to obtain evidence out of the Plaintiff's cell phone without a warrant.

(82) On July 29, 2014 less than 24 hours of the arrest, all the illegally seized possessions of the Plaintiffs' being stored at the Vineland Police Department were provided to the FBI witout no Federal warrant or Jurisdiction to take these possessions.

(83) How them can Judge Kugler allow the FBI to seize the Plaintiff's vehicle, phone and wallet by presumptuasly associating it to the attempted murder in Vineland N.J.,jurisdiction. Days later; however, the FBI secured a search warrant for the Plaintiffs vehicle. To this day, nevertheless, a search warrant was never produced for Plaintiff wallet and identification.

(84) Now with Plaintiff Stephan Byrd lodged in the Cumberland County jail on the Vineland New Jersey Attempted Murder charges, the next phase of action was triggered.

(85) On July 29, 2014, a joint meeting is held at the Vineland Police Department at 11:00 A.M.: just as Special Agent Joseph Furey had called for in the emails on July 28, 2014 after the arrest. This meeting would be for the dlegation of warrants.

(86) As a result, Detective Michael Fransko of Vineland Police Department obtains a Search Warrant for Plaintiff home for alleged bank robberies and Special Agent Monica Cueto obtains a search warrant for the Plaintiff vehicle.

(87) Folluoing the search of the Plaintiff home not one law enforcement officer went to the Cumberland county jaild to inform the complant

nant of the search or to provide him with an inventory of the items seized. Not to mention the Plaintiff is not charged with no bank robberies out of Vineland New Jersey or Federal Jurisdiction. Also this entire team of agencies all went and participated in the search of Plaintiff home. Although FBI obtains the warrant for the car they allow Vineland Police Department Detective Michael Fransko and other Vineland Police Officers to do the inventory search of the vehicle. What's ironic is that Det. Michael Fransko is one of the first responders to the attempted murder on July 16, 2014, yet he knows the car is on the Call Detail Report to the Attempted Murder yet he searches it for the FBI bank robbery investigation.

(88) The same officers and agents who had fabricated the vehicle at the scene of this attempted murder, is the very same law enforcement who executed the warrant on the defendant home while he is lodged in the Cumberland County Jail on a bail that is for a framing or conspiracy to commit Attempted Murder. Not one law enforcemtn agent or official went to the Cumberland County County Jail to inform the Plaintiff of the search of his house and vehicle or to provide him with an inventory of the items seized. In fact, the Plaintiff didn't learn of this search until October 1, 2014.

(89) Also on July 29, 2014 Vineland Police Officer Graig Scarpa acquires the Plaintiff's timecards and check stubs secured from the Plaintiff place of employment, and everything supports the statemants of Shawn Jones that the Plaintiff was not at the shooting. (90) On or about August 5, 2014, Graig Scarpa retrieves video footage of Mr. Byrd on the shop floor at work all day on July 16, 2014 which completely discredit the statement of Chicana Brown made to authorities.

(32)

This video footage obtained by Officer Graig Scarpa also shows the Plaintiff vehicle in the parking lot of his employer at the time of the shooting on July 16, 2014, Lets keep in mind also that Vineland Police Department placed the time cards under case number 2014-38977, a robbery case and never once attempted to take the Plaintiff off this crime. In fact it is August 5, 2014 and the Plaintiff has yet to go before a judge on the attempted murder arrest from July 28, 2014. In fact the Plaintiff is denied his first appearance for three months while he is detained in the Cumberland County Jail on an Attempted Murder Conspiracy he has been framed for. (As documented evidence will show)

(91) New Jersey Court Rule 3:4-2 states, "If the defendant is in custody, the first appearance shall occur within 48 hours of a defendant commitment to the county jail, and shall be before a judge with authority to set conditions of relase for the offense charged." The rule defines, "follwing the filing of a complaint the defendant shall be brought before a judge for a first appearance."

https://www.judiciary.state.nj.us/attorneys/assets/rules/r3-4.pdf

(July 10, 2018)

Also to step back briefly, on July 29, 2014 the day the FBI obtains the Plaintiff vehicle and phone fnom the Vineland Police Department, the FBI reached out to the Assistant United States Attorney Courtney Oliva to acquire the Historical Cell site Order for the Cell Site Location Information off the phone seized on the Attmepted murder arrest. On July 30, 2014 Denise Studlack of the FBI issie subpoenas to AT&T subpoena compliance department.

(92) August 5, 2014 Vineland Police Department obtains the video of Plaintiff and his vehicle clearly at his place of employment: Officer Graig Scarpa writes..." I validated Byrds' claim by matching the video to the time cards showing him arriving and leaving work."

(33)

However, on the same August 5, 2014 in Officer Gregory Pacitto Supplementary Report he mentions none of this nor do he mention that Chicana Brown lied to law enforcement and that an innocent man is in jail. This is due to the fact that it was a framing from the beginning. (93) To make matters worst, while the Plaintiff illegally sat in custody, The Federal Government was obtaining Subpoenas for every company the Plaintiff had personal information from inside his wallet when he was seized on July 28, 2014 by United States Marshal Service and Vineland Police Department for the Conspiracy to commit Attempted Murder this personal information came from but not limited to credit cards, bank cards, casino comp cards, etc. this wallet was also illegally seized an ⎿handed over to the FBI within 24 hours after his initial arrest along with the phone an vehicle.

(94) On August 8, 2014, Assistant United States Attorney Courtney Oliva emailed Special Agent Michael Scimeca informing him she had acquired the subpoenas to listen to the Plaintiff's phone calls in the Cumberland County Jail while the Plaintiff was still being held illegally on the Attempted Homicide charge from Vineland New Jersey. (95) At this point, the Plaintiff still had not been charged on any Federal charge and had already been exonerated of the Attempted Homicide by Officer Graig Scarpa the No.2 on the attempted murder investigation.

(96) So by August 15, 2014 this multi-jurisdictional task force has acquired exculpatory evidence in the form of eye witness Shawn Jones statement of July 29, 2014, timecards from employer on July 29, 2014, video footage of Plaintiff on his employer floor at work with his vehicle which was retained on August 5, 2014 and the validation of Vineland Police Officer Graig Scarpa on August 5, 2014. Still the

(34)

Plaintiff is denied access to a Judge. Also what still sits in the middle of this mountain of exculpatory evidence is the fact that the Plaintiff phone number and vehicle is planted evidence vicariously through the attempted murder "Call Detail Report", that created the nexus of Plaintiff being at this attempted murder, which was later supported by a coerced false statement of career criminal Chicana Brown who authorities manufactured as a witness.

(97) On August 28, 2014 FBI Marlee J. Kohlman emails Special Agent Michael Scimeca the AT&T historical file for the phone seized July 28, 2014, from off the attempted murder arrest. This phone number is [856-558-3487].

(98) On August 29, 2014 Special Agent Michael Scimeca emails Special Agent Joseph Furey, North Brunswick Police Detective Michael Savigne United States Marshal Service Nicholas Sterchele, and Cumberland County Prosecutor Office Sgt. Detective Michael Donato, Vineland Police Department Officer Matthew Finley and Gregory Pacitto who is lead on the Attempted Murder; in this particular email FBI Agent Michael Scimeca explains with a timeline all the dates relevant to all crimes for the Cell Site Location Information except for July 16, 2014 attempted murder. Yet Michael Donato of Cumberland County Prosecutor Office and the actual charging Officer Gregory Pacitto is on this email. (99) It's important to remember that Officer Matthew Finley who is a lieutenant at Vineland Police Department, is on the document as the reviewing Lieutenant when Officer Graig Scarpa Validates the Plaintiff claims on August 5, 2014 from the video footage. Also the attempted murder is on all the documents as part of the timeline. Only now it is being ignored.

(100) Yet approximately on September 1, 2014, two days later FBI Agent Michael Scimeca emails Vineland Police Lieutenant Matthew Finley

(35)

asking for a copy of all the police reports from the July 16, 2014 shooting in order to push the envelope: "And to really push the envelope, could I get a copy of the police report for the shooting on 7/16/2014. The shooting is part of the timeline and wanted to include that information as well."

(101) This is right after he intentionally leaves it out of the timeline with respect to the Cell Site Location Information.

(102) Heres why Special Agent Michael Scimeca ignored the shooting in respect to the timeline with Cell Site Location Information of August 29, 2014: this very same cell site information showed plaintiff to be on his phone at work on July 16, 2014 at 1:57p.m. Now on the Call Detail Report of the attempted murder, the Plaintiff car is called in at 1:56p.m. on July 16, 2014. Showing that this Cell Site Location Information from this phone seized off the attempted murder arrest was another piece of exculpatory evidence to have the Plaintiff taken off this attempted murder charge.

(103) On September 30, 2014 Federal Criminal complaints are sworn out on Plaintiff in Federal Jurisdiction. IN the substantial basis that accompanied the complaint for probable cause for a federal arrest warrant, the FBI used the vehicle and phone [Cell Site Location Information] in the analysis of probalbe cause. When this very same phone and vehicle was exculpatory evidence to take the Plaintiff off the attempted murder charge. Not to mention these possessions of the Plaintiff, i.e., his vehicle and phone, is seized illegally on a charge he was framed for by the very same multi-jurisdictional task force.

(104) By September 30, 2014, Plaintiff is charged with the conspiracy to commit attempted murder and weapon possessions in the State Jurisdiction

(36)

diction of Vineland New Jersey: He's charged with kidnapping, rob-
bery, possession of weapons in North Brunswick New Jersey; and
two bank robberies out of Vineland New Jersey with weapon charges
in Federal Jurisdiction. However Plaintiff still is denied access
to the courts and remain on the attempted murder charge in Cumber-
land County Jail having had no first appearance as of yet. Clearly
the Plaintiff Fourteenth Amendment Due Process in the State of New
Jersey is being violated as well as his Fifth Amendment Due Process
in Federal Jurisdiction. Also his Fourth Amendment rights of illegal
seizure without probable cause. Still this team of agencies conti-
nued to igmore the egregious violations that are taking place.
(105) On October 20, 2014 in which the Plaintiff is still on the
attempted murder and has had no access to a first appearance what
so ever, Lieutenant Matthew Finley of Vineland Police Department
emails Special Agent Michael Scimeca of the FBI asking:

        "Any word on when the press release will be coming for Byrd's
arrest? I am starting to get heat from above my rank, if you know
what I mean...(smile)" ᵂʰᵃᵗ ᴵ ᵐᵉᵃⁿ

Special Agent Michael Scimeca responds "I get it. I am told that
the press release will be made on the day of Byrd's initial appear-
ance-10/27/2014. I am told we will get a forward copy and I will
share that with all involved. Sorry for the wait"
(106) Clearly this shows that Vineland had arrested, seized, and
detained the Plaintiff withoutta first appearance strictly for
the Federal Government investigation. Note: Lt. Matthew Finley,
is the reviewing Officer on August 5, 2014 when Graig Scarpa
validates the Plaintiff innocense. In other words, Lt. Matthew
Finley of Vineland Police Department was aware of Officer Graig
Scarpa

(37)

Scarpa exculpation of the Plaintiff and knew of his innocence only days later. Thus the "heat" Lt. Finley is referring to is having knowledge of that innocence, but still detaining the Plaintiff in an investigative detention predicated on a framing by this ad-hoc task force, which was controlled by the Federal Government for bank robbery investigations. Everyone knew of the Plaintiff innocence from the beginning, but were conspiring to illegally hold him for the FBI. What is truly scary about this ordeal, is that if this multiple team of agencies together, in collusion, flet that they could conduct such a high level of criminality and illegality, as well as fraul on the court, and get away with such offensive behavior, then we all must pause and question every case that has developed within this union of agencies. Only to ask ourselves, how many others were innocent.

(107) Clarity emerges when viewing these email/telecommunications, the discoveries, the sworn affidavits of no probable cause, the grand jury transcripts of the attempted murder, and most importantly the record that Mr. Byrd has developed in Federal Jurisdiction, in Honorable Judge Robert B. Kugler courtroom for the past $4\frac{1}{2}$ years in pretrial. Which is where Mr. Byrd has remained since 2014, i.e., fighting for his innocence.

(108) On October 27, 2014, the Plaintiff get his first appearance and it is in Federal Jurisdiction for Bank Robberies. He's then taken back to Cumberland County Jail and placed back on the attempted Murder until his first appearance on November 19, 2014 before Honorable Judge D'Arrigo.

(109) Also prior to the first appearance in Federal Jurisdiction on October 6, 2014, Vineland Police Department and North Brunswick

Police Department had already agreed to ROR Mr. Byrd on the charges of conspiracy to commit attempted murder, weapon charges and said person not have weapons out of Vineland jurisdiction and kidnapping robbery and weapon possessions out of North Brunswick Jurisdiction. Only showing that these most serious felony offenses were nothing more than a ruse for the Federal Government bank robbery investigation. These ROR's are agreed upon without the Plaintiff having had a first appearance. What's truly surprising though is how could Vineland Police Department, North Brunswick Police Department, and the Federal Government agree to ROR the Plaintiff on such serious felony violations and somehow already have concluded that any Judge in the United States of America would be in agreement with such ridiculousness if not already in collusion prior to the Plaintiff hearing.

(110) On December 17, 2014, Cumberland County Prosecutor Office sent Plaintiff documents showing that a grand jury had convened and had sent back a No-Bill on the Plaintiff. Suggesting that the Plaintiff was presented on the form of the indictment to grand jury for New Jersey Statutory Violations due to the fact this is the only possible way that a defendant could be No-Billed or indicted.

(111) After a continuous battle in Federal Jurisdiction which is ongoing as Plaintiff has 5 years in pre-trial with respect to fighting against the offensive egregious constitutional violations of this multi-jurisdictional task force; On May 08, 2018 Vineland Police Department Supervisor of Records swore out affidavits that there is absolutely no probable cause determination oral or written on record that would justify the arrest warrants of July 25, 2014 against the Plaintiff Stephan Byrd. Secondly, Michelle Pedulla verified that the "Vineland Police Call Detail Report" to the

attempted murder crime scene, clearly shows and establish that
Plaintiff vehicle is present at the scene of the shooting
contemporaneous to the events. Which in essence support the Plaintiff
was framed due to the fact that the Plaintiff vehicle was at his
place of work on camera and was verified on August 5, 2014 by
Vineland Police Officer Craig Scarpa. Furthermore this shooting
takes place on July 16, 2014, if Plaintiff vehicle is placed on
that document contemporaneously to the events, then that show us
that Chicana Brown was not lying in her sworn affidavit that she
was coerced to provide that statement and also would justify why
she asked Officer Gregory Paccitto of Vineland Police Department
for her reward on camera and said Officer never reporting that
fact.

(112) With these facts known, how was the Federal Government who
was implicit in charging the Plaintiff with the conspiracy to
commit attempted murder, the only agency requesting seizures prior
to even an arrest warrant, as well as the only agency to have taken
custody of all the Plaintiff property seized from the arrest; able
to use the Plaintiff car and phone that was seized through illegal
means on a framing, in the substantial basis of probable cause that
accompanied the arrest warrant in Federal Jurisdiction on September
30, 2014... In fact throughout this instant matter, there has been
a proponderance of the evidence that proves the Plaintiff vehicle
could not have been present at the Vineland crime scene of the
attempted murder, nor could the Plaintiff have been there.

(113) Now as was previously stated in or around December 17, 2014
the State of New Jersey, County of Cumberland, Allegedly "No-Billed"
the Plaintiff for the conspiracy to commit attempted murder as well

as various other charges.

(114) The Plaintiff has attempted since his arrest of July 2014 to prove that he was framed and that the entire conspiracy to commit attempted murder was a fraud on the court by a multi-jurisdictional team of agencies and prosecutors. The diligence that the Plaintiff has displayed throughout the past 5 years is proven in the record and through the constant accumulation of documented evidence of misconduct, constitutional offensive behavior and extreme violations of a United States Citizen Substantive and Procedural Due Process Rights.

(115) In 2016 the Plaintiff was granted the first strong piece of evidence against this multi-jurisdictional task force, which was their telecommunications throughout the investigation. Clearly these emails and text messages are egregiously offensive to the very halls of justice. Not to mention that the Federal Prosecutor Sara Aliabadi redacted almost 1,000 pieces of evidence in her attempt  to  conceal this high level corruption. Just by what was revealed the Plaintiff should have been granted his motion to remove the redactions, however, Honorable Judge Kugler and A.U.S.A. Sara Aliabadi has done everything possible to prevent the transparency of this entire ordeal through erroneous rullings and motions that even quashed subpoena's that carried sworn affidavits that negated a probable cause analysis. Meaning that Honorable Judge Kugler and Sara Aliabadi are very aware that a innocent man is locked up and they are covering up for this corruption in Federal Jurisdiction.

(116) The record in Federal Jurisdiction is filled with 5 years of Honorable Judge Kugler ruling that their was probable cause on this attempted murder in the State of New Jersey. This was done

(41)

to deceive the Plaintiff into thinking that there was no Constitutional violations done to him. Which in essence was the cause of the Plaintiff having to use the upmost diligence in pursuing all the accumulated evidence from the State of New Jersey and Federal Jurisdictions. Honorable Judge Kugler has made these rulings without no probable cause affidavit or telephonic document before him with respect to what was put before the Honorable Judge D'Arrigo for the issuing of the warrants for conspiracy to commit attempted murder against the Plaintiff on July 25, 2014.

(117) Again just to reiterate the factual sequence, on May 8, 2014 Supervisor of Records Michelle Pedulla from Vineland Police Department swore out affidavits of no probable on those warrants of July 25, 2014.

(118) Now once the Plaintiff had obtained the sworn affidavits from Vineland Police Department and submitted them on the Federal District to show the conspiracy on false charges that Federal Agents controlled, the Assistant United States Attorney Sara Aliabadi who has advocated strongly for the State Probable Cause finding, put in a rebuttal motion to quash the subpoena that she knew carried those sworn affidavits form the same Police Department that had originally created the warrants.

(119) On June 20, 2018 Honorable Judge Kugler granted the prosecution motion to quash; at this precise moment I knew that I was being deceived by Honorable Judge Kugler rulings and A.U.S.A. Sara Aliabadi, and that they both had chose to hide the corruption, misconduct and criminal behavior of this ad-hoc task force in order to protect the law enforcement officials involved and to save the Federal Case.

(120) Prior to this particular ruling, the Plaintiff was decived by Honorable Kugler Court into thinking there were no civil standing, no rights violated, and the Plaintiff arguments on the framing had no merits. Even on March 22, 2017 A.U.S.A. Sara Aliabadi in open court at the evidentiary hearing stated that;

"That issue aside, looking at the probable cause for the State arrest and continued detention of Mr.Byrd, it was supported by probable cause. We can't start with the No-Bill, the idea that, clearly there's no probable cause because there was a No-bill at the end. I think counsel suggested that might somehow suggest that. But if that were the case, then any time a government entity fails to secure an indictment we can go after the people who were pursuing the prosecution, and suggest that they somehow committed misconduct or failed to get probable cause because they were failing to get the indictment. So, we can't start there."

So when Honorable Judge Kugler granted the A.U.S.A. Sara Aliabadi motion to quash a subpoena with sworn affidavits against a probable cause finding, I knew the court's bias and prejudice was controlling his rulings instead of his oath to protect our forefathers legacy, i.e., the United States Constitution.

(121) To make matters worst, in the same ruling where the Honorable Judge Kugler granted the motion to quash the supoena carrying the sworn affidavits, he then turns around and rules again that probable cause is on the State of New Jersey conspiracy to commit attempted murder charges. This was done in spite of the sworn affidavits stating that no probable cause exist on those warrants of July 25, 2014 came from the very same police station that created the original arrest warrants.

The Supervisor of Records Michelle Pedulla also participated in
the investigation in July Of 2014. On July 15, 2014 Police Officer
Michelle Pedulla is the Vineland Police Officer passing the FBI
PDF's through the email with respect to personal information on
the Plaintiff. This is one day prior to the attempted murder event
and Plaintiff car registration and phone number from the June 19,
2014 arrest record being placed on the "Call Detail Report" to
this horrific crime. Also the Cumberland County Criminal Division
gave statements to investigator Kerry Tucker that Mr. Tucker
swore in an affidavit that no probable cause is on the record that
justifies the warrants and detention for July 25, 2014 conspiracy
to commit attempted murder.

(122) Instead of taking on a attitude of defeat, the Plaintiff
decided to continue his pursuit of the truth and proof not only
that he was framed by this task force, but also that his forefathers
Constitution not only has merit and substance, but is the defining
factor that seperates this great civilized nation from those that
are barbaric and oppressive of its citizens.

(123) The Plaintiff began to pursue the grand jury tramscripts
from the December 17, 2014 proceeding where the State of New Jersey
had grand jury proceedings on the conspiracy to commit attempted
murder and stated that the Plaintiff was No-Billed.

(124) On October 22, 2018 the Honorable Judge Delurey in the State
of New Jersey who had acquired jurisdiction over the attempted murder
file, granted the Plaintiff the grand jury proceedings of December
17, 2014 in reference to the conspiracy to commit attempted murder.

(44)

(125) After a careful analytical review of the grand jury proceeding, it was clear that the Plaintiff was never presented under no count of the indictment to this grnad jury. Mr. Byrd the Plaintiff is presented in no way in conjunction with statutory violations. Therefore it would have been virtually impossible for him to have been No-Billed or indicted for that matter. In fact the prosecutor Mr.Owstrowski in his presentation is clearly heard saying "this is State of New Jersey v. Shawn Jones and Eric Bailey. The Plaintiff name is stated for conversation purpose to give the appearance under fraud intent that he was presented, however, the Plaintiff is on no count presnted, nor are any statutory violations read in connection toi the Plaintiff. Yet in all government documents and data bases the Plaintiff is being associated with this indictment and having been No-Billed on specific New Jersey Stautory Violations of  2C:5-2A(2) Conspiracy-AGREE/AID IN CONDUCT CONSTITUTE A CRIME, 2C:39-4D POSS OF WEAPON FOR UNLAWFUL PURPOSE-OTHER WEAPON, 2C:39-7B CERTAIN PERSONS NOT TO HAVE WEAPONS, and 2C:39-5B UNLAWFUL POSS WEAPON- HANDGUN W/O.  This was clearly a fraud on the State and Federal Courts in connection to this conspiracy to commit attempted murder. Clearly this multi-jurisdictional task force kidnapped the Plaintiff under the false pretext of a conspiracy to commit attempted murder, in order to place him in a investigative illegal detention in order to be investigated by the Federal Government for Bank Robberies.

(126) Since the Plaintiff was never presented and never No-Billed, then the State and Federal Prosecutions conspired to falsify documents and have the same presnted on the court of law. In fact a trier of fact would have to ask his own ability to reason, "how

could such misconduct and corruption be ignored with this level
of evidence to substantiate the facts from beginning to end."
(127) Moreso, being that Mr. Byrd the Plaintiff was never No-Billed
and the Federal and State of New Jersey has advocated falsely in
government documents and on the face of the courts,then legally
these charges would still exist under the fraud on the court in
order to deceive the Court of law, the Plaintiff and the tax paying
Citizens of this great Nation.

(128) To add insult to injury, on November 7, 2018 after Plaintiff
submitted the grand jury transcripts on the Federal Court of
Honorable Judge Kugler,  this court decided again to ignore the
facts and continue to cover up the misconduct stated;

        "Everybody already know you were sent a No-Bill"
This is in direct view of evidence to the contrary. The Plaintiff
was never presented on the indictment form or under no count for
New Jersey Statutory violations.

(129) On June 5, 2018  Honorable Judge Kugler denied defendant
Stephan Byrd (Plaintiff in Civil Action) reconsideration motion
on the probable cause and due process violations of the State of
New Jersey attempted murder. This is with the sworn affidavits of
no probable cause. However, its not until June 20, 2018 that he
grants the prosecution motion to quash the subpoena that supposedly
the sworn affidavits derived from. This is all being done in spite
of Honorable Judge Kugler being completely absent of all jurisdiction
due to the Plaintiff case being reviewed by the Third Circuit
Court of Appeals on a Writ of Mandamus for recusal. So clearly
Honorable Judge Kugler violated the Plaintiff Constitutional Rights
to due process without jurisdiction or his absolut immunity which

(46)

is absent a showing of jurisdiction.

(130) On November 6, 2018 when the writ of mandamus en banc was
still under review by the Third Circuit Court of Appeals, Judge
Kugler denies the Plaintiff a Frank's hearing on the attempted murder
arrest warrant with no affidavit for probable cause before the court.
Knowing sworn affidavits in the exhibits to the motion show that
no probable cause exist per Vineland Police Department who created
the arrest warrant. On November 7, 2018 the Plaintiff is denied
a Frank's motion on the Federal affidavit that used the vehicle and
phone that was taken illegally off the false arrest in its substantial
basis for probable cause for the Plaintiff arrest in Federal Jurisdiction.
(131) Honorable Judge Kugler is violating the Plaintiff Constitutional
Rights to Substantive Due Process clearly, blatantly, and deliberately,
with total disregard for law, fairness and his sworn oath to protect
the United States Constitution.

(132) If any concept is fundamental to the American System of Justice,
it is that those charged with upholding the United States Constitution
are prohibited from deliberately fabricating evidence and framing
individuals for crimes they did not commit. Actions taken in
contravention of this prohibition necessarily violate's a citizen's
due process of law and represents a serious threat to the integrity
of the Judicial Process.

(133) Plaintiff is informed and believe and thereon allege that the
City of Vineland and Defendants Lt. Matthew Finley, Off. Graig Scarpa,
Off Gregory Pacitto and Detective Michael Fransko inclusive breached
their duty of care to the public in that they have failed the disci-
pline defendants and Does 1-100 inclusive, for their respective mis-
conduct and involvement in the incident described herein. Their fail-

(47)

ure to discipline defendants and Does 1-100 inclusive, demonstrates
the existence of an entrenched culture, policy and practice of pro-
moting, tolerating and/or ratifying with deliberate indifference the
making of framing Vineland, New Jersey, life ling citizens for crimes
they did not commit and placing them in improper detentions and ill-
egal arrests, and fabrication of official reports to cover up for
defendants' as the Cumberland County Prosecution's Office had done
to shield the misconduct under a false no bill.

(134) Plaintiff is informed and believe and thereon allege that mem-
bers of the City of Vineland Police Department including but not
limited to, Defendants Lt. Matthew Finley, Detective Michael Fransko,
Off. Graig Scarpa, Off Gregory Pacitto, and Does 1-100 and/or each of
them have individually and/or while acting in concert with one another
engaged in a repeated pattern and practice of violating the Constitu-
tional Rights and making improper detentions and/or false arrests,
against individuals, including, but not limited to Plaintiff, Stephan
Byrd.

(135) A policy need not be formal or written to serve as the basis
for liability. "Tacit Authorization" may be sufficient, and failure
to take remedial action may also be evidence of a policy. There are
supervisory officials who were implicitly authorizing, approving, and
knowingly acquiescing in criminal actions, misconduct and violations
of Constitutional Rights. Their actions have been memorialized in
their own words in telecommunications and cross jurisdictional emails.
(136) The derivative Constitutional-Tort led to extreme executions of
spuriousness, contumacious-behavior, and violations of fundamental
Human Rights, Constitutional Rights and Civil Rights as described infra:
* Malicious Prosecution
* False

* False Arrest

* Kidnapping

* Falsifying Documents

* Abuse of Process

* Illegal Search and Seizure

* Fabricating Crime Scene Evidence

* Unconstitutional Use of Plaintiff Cell Phone

* Perjury

* Subornation of Perjury

* Illegal Detention

* Tampering With A Witness

* Obstruction of Justice

* Failure to Disclose Exculpatory Evidence

* Defamation of Character

* False Imprisonment

(137) The agregious overt actions of these State, Federal and Local
law enforcement Officials let to Plaintiff being deprived of life,
liberty and property, in contravention to the Constitution and Bill
of Rights. The Constitutional Tort inter alia, led to the Plaintiff
being subject to kidnapping, illegal detention, defamation of chara-
cter and illegal seizures etc.

(138) Constitutional-tort and the overt actions of Special Agents
acting under Color of State Law, and Oath of Office led to Plaintiff
being subjected to duress an being placed in a continual line of pre-
judice in the Federal District for bank robberies. The Plaintiff was
just released after 19 years of imprisonment for aggaravated manslaughter
where his conviction was in Vineland, New Jersey. So for this task
force to have framed the Plaintiff under the fraud charges of conspi-
rac

iracy to commit Attempted Murder, and then gave a press Conference in association of the fraud attempted murder charges and bank robbery charges together. Surely allowed society to assume that the defendant is guilty due to his past history, of being guilty of the aggravated manslaughter.

(139) Especially when a trier of fact considers that Beborah Marko of Vineland, New Jersey Daily Press wrote an extensive article in the Daily Times associating the Plaintiff with the conspiracy to commit Attempted Murder, and that Mr. Byrd (Plaintiff) had an ongoing dispute with the victim Eric Bogan. This is totally fabricated information to criminalize the Plaintiff in the eyes of the media as a tool of the ongoing conspiracy, in 2014 against the Plaintiff. Never once did Deborah Marko investigate this matter or her due diligence to be sure that what these agents had advocated to her was trustful.

(140) As a consequence of defendants' violation of Plaintiff federal civil rights under 42 U.S.C. §1983 and the Fourteenth Amendment, Plaintiffs 4th Amendment rights to be free from false arrest, malicious prosecution, false imprisonment, illegal search and seizures, planting evidences, illegal detention, falsifying documents, abuse of process, perjury and subornation of perjury, Plaintiff's 5th Amendment Due Process rights in Federal Jurisdiction to be brought to Justice fairly and not to be framed for crimes he did not commit, and then as a result of arrest for fraud charges Federal Government order seizure of phone and vehicle to be use in Federal Jurisdiction to secure an arrest warrant on bank robbery charges, Plaintiff has suffered mentally, emotionally injuries and damaged as a proximate result of loss employment, loss of familial relations, standing in society, financial stability, comfort, protection, companionship,

Plaintiff as well suffers embarassment, humiliation, indignity, anxiety, emotional distress, and personal inconveniece of being detained for five years in pre-trial detention as a result of a framing on conspiracy to commit Attempted Murder that this multi-jurisdictional task force created for investigative purposes.

## COUNT ONE

42 U.S.C. § 1983

Violation of the Fourth Amendment

### Kidnapping

(141) The right of the people to be secure in their persons, houses papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place or things to be seized.

(142) Any and all defendants, john and jane does 1-100 did act under the color of State law, to unlawfully confine the Plaintiff for a substantial period of time, thereby resticting the Plaintiff liberty interest for purpose and intentions to hold for investigative purposes which was a facilitation of a felony by kidnapping the Plaintiff under the guise of a felony charge of conspiracy to commit Attempted Murder.

## COUNT TWO

42 U.S.C. § 1983

Violation of the Fourth Amendment

### Malicious Prosecution

(143) The Fourth Amendments protection against unreasonable search and seizures emcompasses the right to be free from malicious prosecution.

(144) Defendants, while acting under the color of State Law, violated

Plaintiff's clearly established right under the Fourth Amendment by initiating a criminal proceeding against the Plaintiff without probable cause, causing the Plaintiff to suffer a deprivation of liberty consistant with the concept of seizure as a consequence of legal proceedings. This was clearly an abuse of judicial process by government agents.

(145) Criminal Proceedings on the malicious prosecution terminated against Plaintiff in his favor on December 17, 2014.

## COUNT THREE

42 U.S.C. § 1983

Violation of Fourth Amendment

### False Arrest

(146) An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983.

(147) On July 28, 2014 any and all defendants, Jane and John Does 1-100 initiated a false arrest against Plaintiff absent a probable cause finding written or spoken on record that would justify the warrants for conspiracy to commit Attempted Murder on July 25, 2014.

(148) Through the Plaintiff reasonable diligence to prove he was falsely arrested by defendants within this multi-jurisdictional task force on May 8, 2018 Vineland Police Department Supervisor Affidavits that no probable cause exist for the justification on warrants on Plaintiff Stephan Byrd for July 25, 2014, consisting of conspiracy to commit attempted murder, weapon possession and said person not to have weapons.

## COUNT FOUR

42 U.S.C. § 1983

Violation of the Fourth Amendment

(52)

## Illegal Search and Seizure

(149) The right of the people to be secure in their person, houses, papers and effects, against unreasonable searches and seizures is the bulwark of the 4th Amendment Protection for all citizens of the United States.

(150) On July 28, 2014, Any and all defendants, Jane and John Does 1-100 illegally seized the Plaintiff phone, vehicle, wallet possessions without warrants or probable cause.

(151) State Agents and United States Marshal Service were authorized by the FBI to seize Plaintiff possessions on July 24, 2014 prior to any warrant, jurisdiction or probable cause for the seizures being established.

## Count Five

### 42 U.S.C. § 1983

### Abuse of Process

(152) On December 17, 2014, Cumberland County Prosecution falsely employed Grand Jury procedures against the Plaintiff in order to create a fraudulent No-Bill: when in fact, the Grand Jury never heard no statutory violations in connection to Mr. Stephan Byrd (Plaintiff), nor was he included on the indictment form presented to Grand Jury for the conspiracy to commit the Attempted Murder.

(153) The Defendant perverted this legal process in order to cover up the misconduct of the multi-jurisdictional task force. Although the Plaintiff was never included in the indictment form or presentment noroon no statutory violation count, Cumberland County Prosecutor Mr. Ostrowski placed fraudulent documents in the data criminal bases, that the Plaintiff was No-Billed by the Grand Jury of December 17, 2014, under this indictment.

## COUNT SIX

42 U.S.C. § 1983

Violation of the Fourteenth Amendment

### Procedural Due Process Violations

(154) The Due Process Clause of the Fourteenth Amendment protects against the deprivation of liberty witout due process of law. Persons violating the Fourteenth Amendment under Color of State Law are liable at Law and in equity under 42 U.S.C. § 1983.

(155) Defendants, while acting under color of State law, violated Plaintiff clearly established right under the Fourteenth Amendment by depriving him of further judicial process after his liberty interest was restricted on July 28, 2014.

(156) Plaintiff was denied access to a Court appointed official for 110 days or more to be heard on the charges that caused the liberty deprivation.

(157) With regard to procedural due process the Supreme Court has "repeatedly held that State Statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment.

(158) Plaintiff liberty interests was denied without any procedure whatsoever. Process was denied the Plaintiff despite the significant liberty interest involved the minimal cost of ensuring an initial appearance before a judicial officer, and the likelihood that such minimal procedure would prevent the type of harm visited upon the Plaintiff here.

## COUNT SEVEN

42 U.S.C. § 1983

Violation of the Fourteenth Amendment

## Due Process Clause

### Fabrication of Evidence

(159) On July 16, 2014 Defendants acting under Color of State Law
fabricated the Plaintiff vehicle as being at the scene of the consp-
iracy to commit Attempted Murder.

(160) The fabrication of Plaintiff vehicle being at the scene of this
horrific crime was created vicariously through the "Call Detail Report"
of Vineland Police Department contemporeneously to the events as
they occurred.

(161) Also Chicana Brown was coerced and paid to make false statements
that corroborated the Plaintiff being at the scene of this crime by
the defendants.

(162) The two pieces of fabricated evidence in the form of Plaintiff
vehicle and the paid coerced statements by Chicana Brown was significant
due to the fact it was the only evidence ever presented on the Plaintiff
based on evidence of discovery documents, and without those two pieces
of evidence the Plaintiff could not have been charged.


## COUNT EIGHT

### ( Defamation of Character Claim)

(163) Any and all defendants gave a press confernce connecting the
Plaintiff to this conspiracy to commit Attempted Murder, that any and
all defendants knew the Plaintiff had been framed for by this multi-
jurisdictional task force collective decision to charge the Plaintiff
with the false charges.

(164) Any and all defendants, Jane and John Doe 1-100, asserted
knowingly false and defamatory statements concerning Plaintiff in
connection to the July 16, 2014 conspiracy to commit Attempted Murder.

(165) Furthermore, Deborah Marko of Vineland Times Journal made publication of the false statemtns that connected the Plaintiff to the conspiracy to commit Attempted Murder.

## COUNT NINE

42 U.S.C. § 1985

(Conspiracy to Interfere with Civil Rights)

(166) If two or more persons in a State conspire for the purpose of depriving, either directly or indirectly, any person the equal protection of the laws or equal privileges under the laws is liable under 42 U.S.C. § 1985 Conspiracy. Any and all defendants, Jane and John Doe 1-100, did conspire collectively with invidious discriminatory animus, to falsely arrest the Plaintiff for a charge of conspiracy to commit Attempted Murder. That was falsely concocted with the purpose of depriving the Plaintiff directly or indirectly with equal protection of the laws.

(167) In the furtherance of the conspiracy the Plaintiff was denied access to the courts for over 110 days while on an illegal detention predicated on the false charges. Also it was frauduantly purported in State documents that Plaintiff was taken to Grand Jury and sent a No-Bill to cover up the conspiracy. When in fact the Plaintiff was never presented in conjunction with no statutory violations at Grand Jury. (168) This conspiracy deprived the Plaintiff of his civil liberities, human rights and Constitutional rights.

## COUNT TEN

42 U.S.C. § 1983

Violation of the Fourteenth Amendment

Equal Protection Clause Violations

(169) The Equal Protection Clause provides that no State shall "deny

(56)

to any person within its jurisdiction, the equal protection of the laws". U.S. Const. Amend XIV. This is not a command that all persons be treated alike, but rather a direction that all persons similarly situated be treated alike.

(170) The Defendants known and unknown, Jame and John Doe 1-100, denied the Plaintiff his right to equal protection of the laws by fabricating evidence, and framing the Plaintiff for a crime every law official acting under the color of law within this team of agencies knew the Plaintiff did not commit.

(171) Citizens in our society who have criminal histories and have paid their debt to society, are not falsely accused and framed for conspiracies to commit attempted murders, just to be investigated for Federal violations that law enforcement suspect the citizen of committing.

(172) Defendants were aware that the Plaintiff was charged with murder in the City of Vineland, New Jersey by Vineland Police Department in 1993-1994. The Plaintiff was ultimately found guilty of aggravated manslaughter in 1994 and had just completed 20 years of incarceration. Therefore any and all defendants knew that framing the Plaintiff for a shooting involved crime would surely produce a warrant and deny the Plaintiff his equal Protection rights under the Fourteenth Amendment Equal Protection Clause.

### Discriminatory Surveillance

(173) Any and all Defendants known and unknown, Jane and John Doe 1-100, either directly or indirectly participated, supported or ignored the discriminatory surveillance of the Plaintiff by running illegal off-line DMV Checks of Motor Vehicle registration and phone number in order to gain access to personal information of Plaintiff. This discriminatory surveillance, was misconduct in a criminal context

as it violated New Jersey Statutory Amendments of computer fraud that
is in strict compliance with the Federal Drivers Privacy Protection
Act of 1994, U.S. Code § 2721-2725, which prohibit States from dis-
closing personal information contained in Motor Vehicle records except
under certain legal specified circumstances.

## COUNT ELEVEN

New Jersey Constitution Violations

of Article 1. Rights and Privileges

Paragraph (1).(7) (8) (10)

(174) Any and All Defendants known and unknown, Jane and John Doe 1-100,
either directly or indirectly, violated the New Jersey Constitution
Article 1. Rights and Privileges, Paragraph (1) (7) (8) (10),
respectively.

(175) New Jersey Constitution Article 1, Paragraph (1) states that
all persons are by nature free and independent, and have certain
natural and unalienable rights, among which are those of enjoying
and defending life and liberty, of acquiring, possessing, and pro-
tecting property, and of pursuing and obtaining safety and happiness.
(176) The Plaintiff was stripped of all unalienable rights of enjoying
his life and freedom. Any and all defendants denied the Plaintiff these
rights by placing him in an illegal detention of incommunicado. Plain-
tiff property possessions were seized during the malicious arrest in
order to be used in an investigation.

(177) Plaintiff was denied his right by the Defendants to be secure
in his person, houses, papers and effects against unreasonable searches
and seizures, as New Jersy Constitution, Article 1, Paragraph (7)
provides to all its citizens. Plaintiff was arrested on a warrant

that has no record of the substantial basis of Probable Cause. To date there is still no explanation how this warrant for a heinous conspiracy to commit Attempted Murder came about. The Plaintiff was falsely arrested and placed on a $250,000.00 cash bail, no 10% and denied access to a Judicial Officer for over a 100 days. Plaintiff Due Process under New Jersey Constitution Article 1 is at the very least, a check on procedure. Its primary concern is whether life, libery or property is deprived without following Constitutional adequate procedures. In this case any and all defendants conspired to violate that very fundamental concept of the Plaintiff Rights a citizen of New Jersey.

## COUNT TWELVE

42 U.S.C. § 1983

Municipality Liability

### City of Vineland, New Jersey

(178) To establish Municipal Liability under § 1983, "A Plaintiff must show that an Official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well settled custom.

(179) The Municipality of Vineland, New Jersey through it's deliberate conduct to frame the Plaintiff for a crime he did not commit was the moving force behind the Plaintiff Constitutional injuries. Any and all defendants, i.e., Lieutenant Matthew Finley, Detective Gregory Pacitto, Detective Graig Scarpa, Detective Michael Fransko are all high ranking Superiors who possess authority to establish final proclamation, policy and edict, were directly the cause of the misconduct within a criminal context that the Plaintiff was subjected too.

(180) A policy need not be formal or written to serve as the basis for Liability

(59)

liability. "Tacit Authorization", may be sufficient, and failure to take remedial action may also be evidence of a policy. Nonetheless the sheer number of high ranking Vineland Officials who participated in this egregious misconduct against Plaintiff Civil, Human and Constitutional rights clearly show a customary practice amongst Superiors and those who's responsibility it is to govern.

(181) Lt. Matthew Finley on October 20, 2014 emails Federal Agent stating: "When is the press conference coming for Byrd, I'm starting to get "Heat" from above my brass."

This clearly shows implicit authorization, approval and knowing acquiesce amongst the top authorities. Especially when one considers that Lt. Finley is the reviewing Lieutenant of the Supplementary Report of August 5, 2014 when Detective Graig Scarpa validates the Plaintiff innocence.

## COUNT THIRTEEN

42 U.S.C. § 1983

Municpality Liability

### Cumberland County, New Jersey

(182) Defendant (s), Michael Ostrowski who is a Cumberland County Pros-ecutor and Detective/Sergent Michael Dinoto, both directly and know-ingly acquiesced in the Constitutional violations of the Plaintiff by exibiting high levels of corruption and misconduct. Detective Gregory Pacitto who testified at Grand Jury knew of Plaintiff innocence along with Michael Dinoto who participated directly in the investigation and framing along with Mr. Ostrowski.

(183) Prosecutor Michael Ostrowski deliberately falsified documents, and data inside of criminal databases by fraud on the court, Mr. Ostrowski lied about Plaintiff being presented under felony of New Jersey Statu-

tory violations to a Grand Jury on December 17, 2014. Mr. Ostrowski
prevaricated in government documents that Plaintiff was sent a No-Bill
on New Jersey Statutory Amendments of 2C: 39-40, Possession of weapons
for unlawful purpose. In fact Mr. Ostrowski is on the Grand Jury pre-
sentment stating unequivocally that Stephan Byrd is not being presented
nor was there ever Statutory Violations on the Plaintiff presented.
(184) Plaintiff is still to this day in Federal Government and State
Data bases associated with Indictment Number 14-12-00949-1, for recieving
a No-Bill, when this never happened, and Degendants' failure, (i.e., All
and any, Jane and John Doe 1-100), to to investigate or correct Consti-
tution Violations of this magnitude of misconduct and criminality sup
ports that there is a policy or custom that led to violations of the
Plaintiff rights.
(185) Detective Gregory Pacitto was the lead Vineland Detective on the
Attempted Murder Conspiracy and knew of Plaintiff innocence, yet testified
at Grand Jury not revealing this innocence as he participated along with
Mr. Ostrowski as if they were presenting the Plaintiff. This entire
fraud at Grand Jury was to cover up the misconduct by the multi-
jurisdictional task force.


## COUNT FOURTEEN

Bivens Action

Violation of Fourth Amendment

### False Arrest

(186) The right of the people to be secure in their persons, houses,
papers and effects, against unreasonable searches and seizures, shall
not be violated, and no warrants shall issue, but upon probable cause,
supported by oath, or affirmation, and particularly describing the
place to be searched, and the persons or things to be seized.

(187) Any and all defendants are sued in their individual and official capacity. Defendants, Special Agent Joseph Furey, Special Agent Bradley Cohen, Special Agent Michael Scimeca, Special Agent Jason Dijoseph, Special Agent Mark Gillen, Special Agent Monica Cueto, Special Agent Carrie Brzezinski, Assistant United States Attorney Courtney Oliva and Assistant United States Attorney Sara Aliabadi, all within their individual capacity were cognizant and participants in the collective decision to frame the Plaintiff and place him on the false arrest of conspiracy to commit Attempted Murder.

(188) The False arrest was without Probable Cause as reflected in the Sworn Affidavits of Vineland Police Department Officer Michelle Pedulla who is the Supervisor of Records. Also reflected in statements provided by Cumberland County Criminal Division. The Criminal Complaint Warrants of July 25, 2014, are without probable cause written or spoken on record.

## COUNT FIFTEENTH

Bivens Action

Violation of Fourth Amendment

### Malicious Prosecution

(189) To prove malicious prosecution under Bivens when the claim is under the Fourth Amendment a Plaintiff must show that: (1) the defendant initiated a criminal proceeding: (2) the criminal proceeding ended in the Plaintiffs' favor: (3) the Defendant initiated the proceeding without probable cause: (4) the Defendant acted maliciously or for a purpose other than bringing the Plaintiff to justice: and (5) the Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

(190) Any and all Agents are being sued in their individual and official

capacity, It is undisputed in factual documented evidence of discovery, sworn affidavits, telecommunication and Grand Jury proceedings on the Attempted Murder Conspiracy that defendants, S.A. Joseph Furey, S.A. Michael Scimeca, S.A. Jason Dijoseph, S.A. Mark Gillen, S.A. Bradley Cohen, S.A. Monica Cueto, S.A. Carrie Brzezinski, A.U.S.A. Courtney Oliva, participated aldng with Vineland Police Department in a collective decision to initiate criminal proceedings against the Plaintiff, and that the criminal proceedings ended in the Plaintiff favor when Cumberland County Prosecutor fabricated documents and put fraud on the court that the Plaintiff was No-Billed at Grand Jury Proceedings of December 17, 2014, when in fact the Prosecutor Michael Ostrowski had used the No-Bill as a pretext to conceal the misconduct and framing by the task force.

(191) In addition, the record is developed with sworn affidavits of No Probable Cause, existing on the conspiract to commit Attempted Murder Furthermore, based on evidence of discriminatory animus on the part of defendants known and unknown, Jane and John Does 1-100, deciding to press charges when evidence suggested no crime was actually committed by the Plaintiff and the multiple agencies framed Stephan Byrd so that his liberty interest could be restricted, which in fact it was restricted on an illegal detention, and his property possessions could be seized illegally and used in a Federal Investigation.

(192) There is no evidence greater on the face of the Court of Law to prove that these Federal Agents acted with malice and criminal intentions than the Agents own words memorialized in telecommunications, discovery, and Grand Jury proceedings.

## COUNT SIXTEENTH

Bivens Action

Violations of Fourth Amendment

### Illegal Search and Seizure

(193) All Agents are sued in their individual and official capacities, Plaintiff Fourth Amendment rights to be free from illegal search and seizure was violated when Defendants, S.A. Joseph Furey, S.A. Michael Scimeca, S.A. Jason Dijoseph, S.A. Mark Gillen, S.A. Bradley Cohen and A.U.S.A. Courtney Oliva, had Plaintiff vehicle, phone and property possessions seized off this malicious arrest of conspiracy to commit Attempted Murder, and provided to the Federal Government to investigate other crimes.

(194) These same Federal Special Agents and Prosecutors were implicitly involved in the collective decision to frame the Plaintiff as a justification to get his property.

(195) Also defendant Nicholas Sterchele who is a detective of Vineland Police Department and a United States Marshals Service member unequivocally was sent by Federal Agents personally to seize the property and who specifically stated that "he was seizing the vehicle and phone for robberies not pertaining to this investigation." Referring to the con- spiracy to commit murder investigation.

(196) This seizure happened at the behest of the FBI with no warrants, no jurisdiction and no charges pending on the Plaintiff.

## COUNT SEVENTEEN

Bivens Action

Violation of Fourth Amendment

### Malicious Abuse of Process

(197) Defendants S.A. Joseph Furey, S.A. Michael Scimeca, S.A. Dijoseph

S.A. Mark Gillen, S.A. Monica Cueto, S.A. Bradley Cohen, A.U.S.A. Courtney
Oliva, and S.A. Carrie Brzezinski, either directly participated in having
a legal process t hat was perverted and directed towards the Plaintiff
for a purpose other tham that which the process was designed for.
(198) All defendants are sued in their individual and official capacities,
the defendants known and unknown had initiated a judicial process under
the color of State Law, against the Plaintiff by framing Plaintiff on
conspiracy to commit Attempted Murder, only to investigate Plaintiff
for Federal Bank robberies. This legal process was perverted and directed
toward Plaintiff for a purpose other than that which the process was
designed for.

(199) These charges were employed for an unlawful purpose of placing
Plaintiff in an illegal detention and seizing his property through
an illegal working arrangement amongst Federal and State Agencies.

## COUNT EIGHTEEN

Bivens Action

Violation of Fifth Amendment

### Equal Protection Clause Violations

(200) The Equal Protection Clause of the Fifth Amendment provides that
the Federal Government shall not deny to any person within the United
States Jurisdiction equal protection of the laws. The Equal Pnotection
Clause guarantees fair procedure and non-arbitrary action, as well as,
just compensation when a citizens Procedural and Substantive Due Process
is clearly violated.

(201) The defendant(s) known and unknown, Jane and John Does 1-100, Special Agent Joseph Furey, Special Agent Michael Scimeca, Special Agent Jason Dijoseph, Special Agent Mark Gillen, Special Agent Bradley Cohen, Special Agent Monica Cueto, Special Agent Carrie Brezinski, Assistant United States Attorney Courtney Oliva and Sara Aliabadi, denied the Plaintiff his right to equal protection of the laws by implicitly taking part in a conspiracy against the Constitutional rights of the Plaintiff.

(202) It was these specific Federal Defendant(s) who instructed the State and United States Marshal Service to place the Plaintiff in a investigative detention by framing the Plaintiff for a conspiracy to commit attempted.

(203) The defendants directed the illegal seizures days prior to a warrant coming down and took control of the Plaintiff property that was seized off the illegal arrest without warrants, jurisdiction, or Federal Charges pending. The Plaintiff property having been seized off the false arrest framing by this task force, was then taken to Federal jurisdiction and used in the substantial basis to acquire a warrant for the Plaintiff on bank robbery charges.

(204) The vehicle and phone used in the Federal probable cause "Substantial Basis", was acquired through Fraud on the court and a malicious prosecution that the defendants were in the collective decision on charging the Plaintiff and executing this egregious conspiracy.

(205) Plaintiff was held over 100 days INCOMMUNICADO under the pretext of State Law at the behest of the Federal Agents as is well documented. As they conspired to deny the Plaintiff his equal Protection Rights under the color of law.

## COUNT NINETEEN

Bivens Action

Violation of Fifth Amendment

### Procedural and Substantive Due Process

(206) Defendant Honorable Judge Kugler, on Jine 4, 2018, violated
the Plaintiff procedural and substantive due process of law.
Judge Kuġler defiantly denied the Plaintiff reconsideration motion
that possessed evidence that negated probable cause on the conspiracy
to commit attempted murder in the State of New Jersey. The evidence
was in the form of sworn affidavits from the Vineland Police
Department Supervisor of Records Michelle Pedulla in New Jersey.
This is precisely the same Police Department that the original
warrants for the conspiracy to commit attempted murder derived
from.

(207) On June 4, 2018 Honorable Judge Kugler was without "Jurisdiction"
due to the Plaintiff criminal case being heard in the Third Circuit
Court of Appeals under a Writ of Mandamus.

(208) On June 20, 2018, Honorable Judge Kugler in an opinion grants
the Federal Prosecution motion to quash a subpoena that carried
evidence that negated the probable cause finding on the conspiracy
to commit attempted murder. Honorable Judge Kugler then states
that there was probable cause supporting the arrest on the conspiracy
charges of attempted murder; this is done even in the face of sworn
affidavits of Vineland Police Department Supervisor Michelle
Pedulla who stated that "No probable cause exist either written
or spoken on record that would justify the warrants on Stephan
Byrd of July 25, 2014. Honorable Judge Kugler also denies the

(67)

sworn affidavits of Court appointed investigator Kerry Tucker.
In which Mr. Tucker confirmed that no probable cause was on
record for the warrants of July 25, 2014, also it was again
corroborated through Cumberland County Criminal Division.
(209) Honorable Judge Kugler then acknowledges in the same opinion
that the criminal case is on appeal in the Third Circuit Court of
Appeals, so no currnet trial date is pending.
(210) A judge is not immune for actions, though judicial in nature,
taken in complete absence of all jurisdiction.
(211) Due Process is, at the very least, a check on procedure. Its
primary concern is whether life, liberty or property is deprived
without following constitutionally adequate procedures. Our Courts
of the United States shall become no safe haven for Judges who
blatantly make grave procedural errors in absence of all jurisdiction.


## COUNT TWENTY

### Federal Tort Claims Act

### *Respondeat Superior Liability


(212) Plaintiff raises claim under the Federal Tort Claims Act
which may only be brought against the United States, when holding
Federal employees liable in a official capacity.
(213) The Plaintiff has presented notice of the claim to all
offending agencies, including a "sum certain" demand for monetary
damages; because the requirements of presentation and a demand
for a sum certain are among the terms defining the United States
Consent to be sued, they are jurisdictional.
(214)  Plaintiff incorporates by reference the allegations of civil,

human and constitutional rights violations by all Federal Employees contained in the first paragraph to the last as if fully set forth herein at length.

(215) At all times defendants of the FBI, Special Agents Joseph Furey, Special Agent Michael Scimeca, Special Agent Jason Dijoseph, Special Agent Mark Gillen , Special Agent Bradley Cohen, Special Agent Monica Cueto, Special Agent Carrie Brzezinski, and Assistant United States Attorneys Courtney Oliva, and Sara Aliabadi, were either acting privately, under color of law , or were acting under oath of office, for the Federal Government, as supervisors, special agents, Assistant United States  Attorney(s) or Official affiliate's.

(216) Supervisory Liability under civil rights statutes occurs either when supervisors personally participate in alleged deprivations, criminality and misconduct; causal connection can be established when wide spread abuse puts responsible supervisors on notice of the need to correct the alleged deprivations, and if they fail to correct the misconduct, or deprivation. Also a policy need not be formal or written to serve as the basis for liability. "Tacit Authorization" may be sufficient, and failure to take remedial action may be evidence of a policy.

(217) These Federal Supervisors, Assistant United States Attorney(s) and Special Agents as defendants, were in on the collective decision to falsely charge the Plaintiff with crimes of conspiracy to commit attempted murder, weapon possessions and said persons not to possess weapons. Clearly all eveidence proves that this framing by the multi-jurisdictional task force was orchestrated by the Federal Governemnt, and the property seized on the arrest was handed over to the Federal government as requested prior to a warrant or jurisdiction federally.

(69)

(218) The Federal Tort Claims Act provides much needed relief to those suffering injury from the negligence of governmental employees. The FTCA is intended by congress to permit liability essentially based on the intentional wrongful or careless conduct of the government's employess, for which the government is to be made liable according to city, state, and federal laws under the doctrine of Respondeat Superior.

## EQUITABLE TOLLING

(218)"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:

    (1) that he has been pursuing his rights diligently, and
(2) that some extraordinary circumstances stood in his way."
[See., Ross v. Varano, 712 F.3d 784, 798 (3rd Cir. 2013)].
(219) Extraordinary Circumstances permitting equitable tolling have been found where; (1) the petitioner has been actively misled; (2) the petitioner has been prevented from asserting his rights in some extraordinary way; (3) the petitioner timely asserted his rights in the wrong forum, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim.
(Fahy v. Horn, 240 F.3d 239, 244 (3rd Cir. 2001)
(220) In favor of the Plaintiff, equitable tolling should be granted due to the overwhelming diligence the Plaintiff has displayed to uncover evidence presented in such a manner that the appearance [by high level ranking FEderal, State, and Local Officials], is clear of mendacious behavior that "No" court which sits under the United States Constitution should tolerate.

(70)

(221) The Plaintiff ability to document this atrocity of justice with court documents, telecommunications of Agents and State law enforcement, the grand jury proceedings, sworn affidavits by law enforcement, and a federal docket containing 5 years of litigation since December of 2014 and ongoing; As the Plaintiff fought vigorously to prove this high level of misconduct and is still in pre-trial detention, actively and diligently pursuing his rights.

(222) This is in spite of the consistent fraud by prosecutors to shield the agents conduct and conceal the egregious criminal behavior that was exhibited by this team of agencies. Also the erroneous rulings of Honorable Judge Robert B. Kugler in his attempt to deceive and mislead the Plaintiff into assuming that he has no constitutional grounds to stand upon, as he takes his place within the conspiracy.

(223) This conspiracy went beyond anything a trier of fact could imagine. So much so that documents and databases was used in the fraud to convey that a grand jury had No-Bill the charges on December 17, 2014, when in fact Grnad Jury proceedings show these events never occurred. The Plaintiff was not even presented, nor was the Plaintiff onany count showing a statutory violation to be no-bill. This was clearly a total fraud on the court by a senior prosecutor to cover up the framing done by this multi-jurisdictional task force.

(224) In no way should expiration of some limitations period block Plaintiff claims; for when misconduct, corruption and invidious behavior becomes the glue of a conspiracy involving multiple agencies and high ranking law enforcement personnel, justice requires and impels strongly towards affording the Plaintiff his day in court on the merits of the claims.

## JURY DEMAND

(225) Plaintiff hereby demand a jury trial on all issues so triable.

## RELIEF REQUESTED

Wherefore, Plaintiff prays for relief, as follows;

(1) For general damages in a sum to be determined at trial:

(2) For special damages, and compensatory damages, including but not limited to, past, present and/ or future wage loss, income and support, litigation expenses in a criminal and civil context and other special damages in a sum to be determined  according to proof;

(3) For a full criminal investigation into the defendant(s), and for each defendant to be charged and prosecuted to the fullest extent of the law, according to all New Jersey Statutory Violations of computer fraud in running off line DMV checks and kidnapping.

(4) For equitable tolling on possible expiration of all limitation periods that may be an issue.

(5) For punitive damages and exemplary damages in amounts to be determined according to proof as to any and all defendants, known and unknown/ and or Jane and John Does 1 through 100 and/ or each of them.

(6) For removal of the Plaintiff name from State and Federal data bases associating the Plaintiff with having received a no-bill under indictment no. 14-12-00949-1 in the State of New Jersey at Cumberland County Grand Jury on December 17, 2014.

Respectfully Submitted

_____

(72)

STEPHAN BYRD

U.S.M.S. - 66971-050

Federal Detention Center

P.O. Box: 562

Philadelphia, PA. 19106

NOTICE OF SERVICE

1.          I, Stephan R. Byrd, sui juris, hereby certify under
the penalty of false swearing that I caused to be served upon
defendants these foregoing moving documentary-evidence to the
best of my ability;

2.          Plaintiff swears that he has been in the continuous
pre-trial detention which impedes Plaintiff resource capabilities;
due to Plaintiff pre-trial detention, he is unable to locate on his
own, defendant(s) individual addresses and therefore, process will
be served upon defendant(s) at the address of employment known
to Plaintiff (ab initio) to date due to Plaintiff limited resource's;
3. Process will be effectively served upon all defendant(s) at
their last known place of employment.

Stephan R. Byrd

STEPHAN R. BYRD
U.S.M.S. 66971-050
FEDERAL DETENTION CENTER
P.O. Box: 562
PHILADELPHIA, PA. 19106

CERTIFICATION PURSUANT TO

LOCAL CIVIL RULES

The Plaintiff, Stephan R. Byrd, in propria persona, citizen hereby certifies that to the best of his knowledge and belief the matters in controversy are not subject of any other civil action suit of this nature pending in any court, nor are thes matters pending arbitration nor administrative proceedings of civil liability in nature.

Stephan R. Byrd

(75)

I, Stephan R. Byrd, Citizen of the United States, sui juris, affirm and declare under the penalty of false swearing, pursuant to 28 U.S.C. § 1746 inter alia that:

1. I understand the foregoing pleadings to the best of my ability to be true in support of these moving documents regarding my request for Civil Rights, Human Rights, Constitutional Rights, and Tort joint complaints;

II. All the statements disclosed in these pleadings are true and correct, or can be verified to the best of my ability and understanding relating to myself, Plaintiff Constitutional Violations, Civil Rights Violations, Human Rights Violations, and Constitutional Violations;

III. The foregoing has been submitted in absolute good faith, and not for harassment nor delay.

STEPHAN R. BYRD

U.S.M.S. 66971-050

FEDERAL DETENTION CENTER

P.O. Box: 562

PHILADELPHIA, PA. 19106

(76)

CERTIFICATE OF SERVICE

I, Stephan R. Byrd, sui juris, hereby certify that on or about the _____ of February, 2019, I caused to be served by U.S. Mail and the original filing by hand delivery, copies of an original consolidated complaint, and additional copies mailed of the foregoing pleadings in these moving matters upon:

1. Atlantic City Resident Agency
   Claremont Tower, 11 Centre Place, Newark, New Jersey
   07102

2. United States Attorney's Office
   District of New Jersey
   970 Broad St. Ste 700
   Newark, New Jersey 07102-2534

3. North Brunswick Police Department
   710 Hermann Rd
   North Brunswick, New Jersey 08902

4. Vineland Police Department
   111 North 6th Street
   Vineland, New Jersey 08360

5. Cumberland County Prosecutors Office
   115 Vine Street
   Bridgeton, New Jersey 08302

6. Vineland Municipal Court
   736 Landis Avenue
   Vineland, New Jersey 08360

7. Honorable Robert B. Kugler

   United States District Court

   Mitchell Cohen Courthouse

   Fourth and Cooper Street

   1 John F. Gerry Plaza

   Camden, New Jersey 08102

8. Sara Aliabadi, A.U.S.A.

   Office of The U.S. Attorney

   401 Market Street, 4th Floor

   Camden, New Jersey 08101

9. Debra M. Marko

   Vineland Times Daily Journal

   891 East Oak Rd.

   Vineland, New Jersey 08360

(78)