**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

STEPHAN BYRD,                          :
                                       :
            Plaintiff,                 :        Civ. No. 19-6879 (FLW) (LHG)
                                       :
      v.                               :
                                       :
LT. MATTHEW FINLEY et al.,             :        **MEMORANDUM OPINION**
                                       :
            Defendants.                :

---

**FREDA L. WOLFSON, U.S.D.J.**

Plaintiff, Stephan Byrd ("Byrd" or "Plaintiff"), a convicted federal prisoner, filed with the

Court a *pro se* complaint alleging claims under 42 U.S.C. § 1983.  The Court previously denied

without prejudice Plaintiff's IFP application, ECF No. 3, and Plaintiff has resubmitted a certified

account statement.  ECF No. 4.  At this time, the Court grants Plaintiff's IFP application and

screens Plaintiff's Complaint, ECF No. 1, for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

I.      **SCREENING UNDER 28 U.S.C. § 1915(e)(2)(B)**

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat.

1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those

civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B),

seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a

claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts

to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

## II.   THE COMPLAINT AND RELEVANT BACKGROUND

The gravamen of Plaintiff's 78-page Complaint is that members of a multijurisdictional task force,[1] comprised of local, state, and federal officials, falsely arrested and detained Byrd in July 2014 on attempted murder charges in order to develop evidence to prosecute him for a series of federal bank robberies.

Plaintiff has sued Lt. Matthew Finley, Detective Michael Fransko, Detective Craig Scarpa, Detective/United States Marshal Service Nicholas Sterchele, Detective Gregory Pacitto, Supervisor of Records Officer Michelle Pedulla, and DMCA Damaris Cortes, Detective Michael Sauvigne, Detective Ken Gonzalez, Detective Michael Dinato, Prosecutor Michael Ostrowski, Special Agent Joseph Furey, Special Agent Michael Scimeca, Special Agent Jason Dijoseph, Special Agent Mark Gillen, Special Agent Bradley Cohen, Special Agent Monica Cueto, Special Agent Carrie Brzezinski, Assistant U.S. Attorneys Courtney Oliva and Sara Oliabadi, and the Honorable Judge Robert B. Kugler.  Plaintiff has also named as Defendants the City of Vineland and Cumberland County, The Daily Journal (of Vineland New Jersey), journalist Deborah M. Marko, and John and Jane Does 1-100.  *See* Complaint at 6-7.

---

[1] This multi-jurisdictional task force consisted of Vineland Police Department, Federal Bureau of Investigation ("FBI"), North Brunswick Police Department, United States Marshal Service ("USMS"), Hamilton Township Police Department, Franklin Township Police Department, Assistant United States Attorney(s), the Cumberland County Prosecutor's Office, and other unnamed agencies. *See* Complaint at 10.

According to the Complaint, the local, state, and federal Defendants allegedly obtained search warrants for Plaintiff's car and residence and obtained statements from Plaintiff about the federal bank robberies in violation of his Fourth Amendment rights and also failed to bring him before a judge on the state charges in violation of his due process rights. *See* Complaint at 9-11.

The shooting occurred on July 16, 2014, and the victim, Eric Bogan, was shot by three black male suspects in Vineland, New Jersey. Complaint at 15. On July 28, 2014, Plaintiff was arrested by members of the USMS and the Vineland Police Department for Attempted Murder, Conspiracy, Possession of a Weapon, and Possession of a Weapon by a convicted felon. *Id.* at 9. Officer Gregory Pacitto of Vineland Police Department signed the arrest warrant, but Plaintiff learned though subsequent investigation that no affidavit of probable cause or recorded statement of probable cause was sworn out by Pacitto. *Id.* at 26. Byrd's arrest was purportedly based on the statement of a "career criminal," Chicana Brown, who gave a statement on July 23, 2014, stating that Byrd provided the gun used in the shooting and was in the assailants' vehicle during the crime.[2] An accomplice to the shooting, Shawn Jones, was interviewed on July 25, 2014, and Jones implicated himself and his cousin Eric Bailey in the crime. Jones also allegedly informed the Vineland Police Department that Plaintiff was <u>not</u> involved in this crime and that his vehicle was not at the crime scene either. *Id.* at 10.

Plaintiff alleges that the members of the Vineland Police Department, acting with and at the direction of members of the FBI, secured warrant to search Plaintiff's car and also kept Plaintiff detained without charging him or bringing him before judge. *Id.*

Plaintiff further alleges that federal Defendants were investigating him for the bank robberies prior to Bogan's shooting. The local, state, and federal Defendants allegedly exchanged

---

[2] Plaintiff states that Brown was coerced into and provided a reward for making the statements implicating Plaintiff. *See* Complaint at 16-19.

personal information about Plaintiff, including his license plate number, phone number, and address, and fabricated evidence to make it appear that Plaintiff's car was at the scene of Bogan's shooting, despite evidence showing his car was at his workplace. *See* Complaint at 11-17. Plaintiff further alleges that emails between FBI agents Furey, Brzezinski and Scimeca show that the FBI was directing local police and that members of the Vineland Police Department and that they agreed to falsely arrest and illegally detain the Plaintiff until evidence was developed to either exclude the Plaintiff as the perpetrator of the bank robberies or charge him. *See* Complaint at 20-24.

The Defendants also improperly seized Plaintiff's car, phone, and wallet without warrants on or about July 28, 2014, in order to obtain evidence for the bank robberies. *Id.* at 30-31. Warrants were later obtained for Plaintiff's home and vehicle in connection with the bank robberies, but Plaintiff was not yet charged with the bank robberies and was not provided with an inventory of the items seized. *Id.* at 31-32.

Plaintiff also alleges that by July 29, 2014, Vineland Police Officer Scarpa received Plaintiff's timecards and check stubs, showing that Plaintiff was at work on July 26, 2014, and on or about August 5, 2014, Scarpa retrieved video footage showing that Plaintiff and car were at work all day on July 16, 2014. *See id.* at 32-33.

While Plaintiff remained jailed on the attempted murder charges, federal Defendants continued to use the information they had obtained to investigate him for the bank robberies. *Id.* at 34.

Plaintiff also alleges there was a three-month delay in his arraignment on the state charges for Bogan's shooting, *see* Complaint at 33, and he contends that he did not have his first appearance on the charges related to the Bogan shooting until November 19, 2014. Complaint at 38.

Moreover, according to the Complaint, on December 17, 2014, the grand jury returned a "No Bill" as to the attempted murder charges.[3]

Although the state charges were ultimately dropped, Plaintiff had his initial appearance for the federal charges on October 27, 2014, and he was indicted in on the federal charges on August 19, 2015. *See* Crim. Act. No. 15-409, Dkt. Nos. 5-8, 20. On September 21, 2016, a grand jury returned a superseding seven-count indictment charging Appellant with Bank Robbery, in violation of 18 U.S.C. § 2113(a) and 2113(d) (Counts One, Three and Five), Possession and Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c) (Counts Two, Four and Six) and Felon in Possession of a Firearm in violation of 18 U.S.C. § 922 (Count Seven). Crim No. 49.

Throughout his federal criminal proceedings, Plaintiff has sought to show that the federal government was in control of arresting and charging him for Bogan's shooting and conducted an improper investigative detention. On August 9, 2016, Plaintiff filed a motion to suppress his statements and the evidence obtained from his home and vehicle, arguing that it was improperly obtained in violation of his Fourth Amendment rights. *See* generally, Crim. No. 15-409, Dkt. Nos. 46-47; see also Nos. 58, 79. On March 28, 2017, Judge Kugler denied without prejudice the motion for discovery and also denied the motions to suppress the evidence and statements. *See* Dkt. No. 82.

In the federal matter, Plaintiff was found guilty on counts 1-7 of the Superseding Indictment by a jury verdict on April 15, 2019. Crim. No. 15-409, Dkt. Nos. 216-217. On August

---

[3] Plaintiff alleges that on October 22, 2018, he received the December 17, 2014 grand jury proceedings from the state court. *See* Complaint at 44. Plaintiff alleges that the record of that proceeding shows that "he" was never presented to the grand jury, and therefore was not "No Billed." *See id.*

18, 2021, Judge Kugler sentenced Plaintiff to a term of 548 months imprisonment and also denied

his various post-trial motions. *See* Crim. No. 15-409 at Dkt. Nos. 257, 258. Plaintiff filed a notice

of appeal to the Third Circuit Court of Appeals on August 26, 2021. *See id.* at Dkt. No. 261.

In his direct appeal, Plaintiff sought to overturn his federal convictions based on the same

alleged constitutional violations that form the basis for this civil rights Complaint. His counsel on

appeal summarizes his due process and Fourth Amendment claims as follows:

> Federal and state authorities violated Appellant's due process rights
> when they conspired to bring baseless state charges against him
> without probable cause and then held him for months without
> counsel or presentation to a court. They intentionally did so, to
> effectuate searches, investigation and interrogation for the federal
> case, under the pretext of investigating the state case. As a result,
> evidence seized, and the Appellant's confession should have been
> suppressed and his case should have been dismissed.

*See* App. No. 21-2613 (3d Cir.), Dkt. No. 15, Byrd's Appellate Brief at p. 34.

On August 25, 2022, the Third Circuit rejected these arguments and affirmed Byrd's

conviction in an unpublished decision. *See id.*, Dkt. No. 58. The Third Circuit's Mandate was

issued on December 27, 2022. *Id.*, Dkt. No. 65. The Third Circuit specifically rejected Byrd's

claims that his confession should have been suppressed and his case dismissed because state

authorities lacked probable cause to arrest him and because federal and state authorities conspired

to bring baseless state charges against him. *See id.* at 2-4. The Third Circuit likewise rejected his

arguments that evidence was improperly seized from his home and his car. *Id.* at 4.

In this instant suit, Plaintiff also brings claims against the Honorable Robert J. Kugler

arising from judicial decisions Judge Kugler made in Plaintiff's federal criminal proceedings.

Judge Kugler denied Plaintiff's motion for reconsideration as to whether there was probable cause

to arrest Plaintiff for attempted murder. *See* Complaint at ¶¶ 129-131. Plaintiff also appears to

assert that Judge Kugler was without jurisdiction to rule on motions in his federal case because

Plaintiff had filed a writ of mandamus to the Third Circuit, which was still under review when the relevant motions were decided.  *See id.*

### III.   <u>DISCUSSION</u>

The Court begins with Plaintiff's civil rights claims brought pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

### a.  **Judge Kugler is Entitled to Judicial Immunity**

Byrd has sued Judge Kugler for civil rights violations, but he is plainly entitled to absolute judicial immunity for all decisions he made in Plaintiff's federal criminal proceedings.  *See, e.g.*, *Kwasnik v. Leblon*, 228 F. App'x 238, 243 (3d Cir. 2007) (judges acting in the performance of their duties are absolutely immune from suit, and will be subject to liability only when they act "in the clear absence of all jurisdiction"); *see also Mireles v. Waco*, 502 U.S. 9, 12 (1991).  Judicial immunity is extremely broad.  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (citation omitted).

Plaintiff appears to assert that Judge Kugler lacked jurisdiction because Plaintiff's mandamus action was still pending in the Third Circuit Court of Appeals at the time Judge Kugler denied his motion for reconsideration.  It is well-established, however, that "[t]he district court does not lose jurisdiction over a case merely because a litigant files an interlocutory petition for an extraordinary writ."  *Ellis v. U.S. Dist. Court for Western Dist. of Washington* (Tacoma), 360 F.3d 1022, 1023 (9th Cir.2004) (en banc); *Bates v. Sullivan*, 6 Fed. Appx. 425, 427 n. 1 (7th Cir.2001) ("a petition for a writ of mandamus does not deprive a district court of jurisdiction over the underlying case"); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1416 (5th Cir.1995) ("If the district

court or the court of appeals finds it appropriate to stay proceedings while a petition for mandamus relief is pending, such a stay may be granted in the court's discretion. However, absent such a stay, the jurisdiction of the district court is not interrupted."); *see also Francis v. Joint Force Headquarters Nat. Guard*, No. 05–4882, 2009 WL 1810737, at *5 (D.N.J. June 24, 2009) (same); *Kalick v. Northwest Airlines Corp.*, No. 08–2972, 2009 WL 2448522, at *3 (D.N.J. Aug. 7, 2009) (same).

Nor does an effort to take an appeal from a patently non-appealable interlocutory order deprive a district court of jurisdiction over the underlying case:

> An appeal from a non-appealable judgment or order is sometimes characterized as a nullity. Indeed, a contrary conclusion would enable a litigant temporarily to deprive a district court of jurisdiction at any non-critical or critical juncture including trial itself, thus bringing proceedings in the district court to a standstill while a non-appealable ruling wends its way through the appellate process. This "great potential for disruption" has been recognized by this court.

*Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985) (internal quotations, citations, and footnotes omitted).  Thus, Judge Kugler retained jurisdiction over Plaintiff's criminal case and was free to decide Plaintiff's various motions while Plaintiff's mandamus petition was pending before the Third Circuit.  Plaintiff has provided no other facts would deprive Judge Kugler of judicial immunity, and the other allegations against Judge Kugler clearly relate to his judicial decisions in Plaintiff's federal criminal matter, some of which were the subject of Plaintiff's unsuccessful direct appeal.  As such, the Court dismisses the Complaint <u>with prejudice</u> against Judge Kugler on the basis of judicial immunity.

### b.  The § 1983 and *Bivens* Claims Against the Remaining Defendants

The Court next addresses the myriad civil rights claims Plaintiff brings against the remaining local, state, and federal Defendants pursuant to 42 U.S.C. § 1983 and *Bivens*.[4]  As explained below, these claims are time barred and also appear to be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

### 1.  Timeliness

Plaintiff's civil rights claims arise from alleged misconduct that occurred in 2014, and this action was filed on or about February 15, 2019, well beyond the two-year limitations period for civil rights claims.  The statute of limitations is an affirmative defense that must generally be pleaded and proved by the defendants.  *See Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (statute of limitations on civil rights claim is an affirmative defense).  While a plaintiff is not required to plead that the claim has been brought within the statute of limitations, *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir.2002), the Supreme Court observed in *Jones v. Bock*, 549 U.S. 199, 215 (2007), that if the allegations of a complaint, "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." The same principle applies to screening complaints under the PLRA.  *See Whitenight v. Commonwealth of Pennsylvania State Police*, 674 F. App'x 142, 144 (3d Cir. 2017) ("When screening a complaint under § 1915, a district court may *sua sponte* dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required."); *Paluch v. Secretary Pennsylvania Dept. of Corrections*, 442 Fed. App'x 690, 694 n. 2 (3d Cir. 2011) ("Although the statute of limitations applicable to § 1983 actions is an affirmative defense, which may be waived by the defendant, it

---

[4] Plaintiff also appears to assert claims under the Federal Tort Claims Act ("FTCA"), which the Court discusses separately below.

is appropriate to dismiss sua sponte under § 1915(e)(2) a complaint whose untimeliness is apparent from the face of the record"); *McPherson v. United States*, 2010 WL 3446879 at *4 (3d Cir. Sept.2, 2010) ("[W]hen a statute-of-limitations defense is apparent from the face of the complaint, a court may *sua sponte* dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A"); *see also Archie v. City of Newark*, No. CIV. 12-3657 FSH, 2012 WL 2476229, at *3 (D.N.J. June 27, 2012) (dismissing complaint as time barred under *sua sponte* screening authority).

Under New Jersey law, there is a two-year statute of limitations period for personal-injury torts.  N.J. Stat. Ann. § 2A:14-2.  Because a § 1983 claim is characterized as a personal-injury claim, such claims are governed by the applicable state's statute of limitations for personal-injury claims.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989).  Likewise, "[a] *Bivens* claim ... is 'characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims.'" *Peguero v. Meyer*, 520 Fed. App'x 58, 60 (3d Cir. 2013) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)); *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080 (3d Cir.1988) (holding that *Bivens* actions are governed by the applicable state law statute of limitations); *Mishra v. Nolan*, 187 F. App'x 136, 137 (3d Cir. 2006) (same).

The limitation period begins to run on the accrual date, which is governed by federal law. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).  Under federal law, a claim accrues when the facts which support the claim reasonably should have become known to the plaintiff.  *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)); *see also Large v. County of Montgomery*, 307 F. App'x. 606, 606 (3d Cir. 2009). "The

determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach*, 589 F.3d at 634. Importantly, accrual is not tied to whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *Giles v. City of Philadelphia*, 542 F. App'x. 121, 123 (3d Cir. 2013) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982)). Rather, "a cause of action accrues when the <u>fact of injury</u> and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011) aff'd, 504 F. App'x. 182 (3d Cir. 2012) (emphasis added). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634. Furthermore, "the rule that a cause of action accrues upon discovery of the injury does not require that a plaintiff have identified every party who may be liable on its claim." *Graff v. Kohlman*, 28 F. App'x 151, 154 (3d Cir. 2002) (citing *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997)).

Plaintiff appears to assert that equitable tolling should apply to his claims for relief because he has been "diligently" pursuing his rights and has been engaged in litigation (presumably his criminal case). *See* Complaint at 70-71.

New Jersey law governs when accrual of a § 1983 claim may be delayed pursuant to the discovery rule and when a limitation period may be equitably tolled. *See Dique*, 603 F.3d at 185; *Freeman v. State*, 347 N.J. Super. 11, 788 A.2d 867, 878 (App. Div. 2002). The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person. *See Caravaggio v. D'Agostini*, 166 N.J. 237, 765 A.2d 182, 187 (2001). Under New Jersey law, the discovery rule is used in special circumstances and where the interests of justice require in order

"to postpone the accrual of a cause of action when a plaintiff does not and cannot know the facts that constitute an actionable claim." *Grunwald v. Bronkesh*, 131 N.J. 483, 492 (1993); *see also Jonas v. Gold*, 627 F. App'x 134, 139 (3d Cir. 2015) (explaining that New Jersey's "discovery rule postpones the accrual date of a cause of action 'until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" (quoting *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563, 565 (1973)). Application of the rule starts the limitations period once a plaintiff is aware of "the facts underlying" the injury and fault, as opposed to "when a plaintiff learns the legal effect of those facts." *Id.* at 493.

 In addition, "equitable tolling may be applied where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass" or where a plaintiff "has in some extraordinary way been prevented from asserting his rights." *Freeman v. State*, 347 N.J. Super. at 31 (internal citations and quotations omitted). Equitable tolling may be appropriate where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. *Id.* "[A]bsent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Id.*

Under federal law, tolling is extraordinary relief that is appropriate only "in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to his or her cause of action; (2) where the plaintiff has been prevented from asserting his or her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts his or her claims in a timely manner but has done so in the wrong forum." *Lake v. Arnold*, 232 F.3d 360, 370, n.9 (3d Cir. 2000).

Here, Byrd has not provided sufficient facts showing that he is entitled to equitable tolling or the discovery rule. Notably, Plaintiff has litigated these very issues in his criminal case for years, and he has provided no explanation for why he did not file a civil suit within the limitations period. For completeness, however, the Court addresses the timeliness of his specific claims below.

Plaintiff brings Fourth Amendment claims arising from his false arrest, false imprisonment, and the unlawful search and seizure of his property. The Fourth Amendment protects against unreasonable searches and seizures by the government and its agents. *See* U.S. Const. amend. IV. For statute of limitations purposes, claims of illegal search and seizure generally accrue and the limitations period begins to run at the time of injury. *See Mujaddid v. Wehling*, 663 F. App'x 115, 119 (3d Cir. 2016). A claim of false arrest, and the accompanying claim for false imprisonment, also begins to accrue immediately upon the arrest at issue. *Wallace*, 549 U.S. at 389–90 & n.3; *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011) (ruling that accrual of a claim for false arrest occurred on the date that the plaintiff "was arrested and charges were filed against him"); *Alexander v. Fletcher*, 367 F. App'x 289, 290–91 (3d Cir. 2010) (affirming the district court's conclusion that a § 1983 false arrest claim began to accrue on the date of arrest). Nevertheless, while the claim accrues upon arrest, the statute of limitations for false arrest/false imprisonment begins to run "when the individual is released, or becomes held pursuant to legal process," *i.e.*, is arraigned. *Alexander*, 367 F. App'x at 290 n. 2 (citing *Wallace*, 549 U.S. at 389-90); *see also Pittman v. Metuchen Police Dept*, 441 F. App'x. 826, 828 (3d Cir. 2011).

Here, the limitations period for the illegal search claims began to run at the time of the searches (or shortly thereafter) in 2014, and the limitations period for the false arrest and false imprisonment claims began to run when Plaintiff was arraigned in November 2014. Even if the

Court were to find that discovery rule or equitable tolling applies, the facts surrounding his Fourth

Amendment claims were known to Plaintiff at the time he filed his motion to suppress on or about

August 8, 2016, and Plaintiff did not file this action until approximately February 15, 2019, more

than two-and-a-half years later.  Accrual of his claims arising out of the 2014 incidents does not

require that Plaintiff be aware of every possible Defendant and every theory of liability.  *See Graff*

*v. Kohlman*, 28 F. App'x at 154.  Here, the § 1983 and *Bivens* claims premised on Plaintiff's false

arrest, false imprisonment, and the illegal search and seizure are time barred and dismissed on that

basis.[5]

The Court also construes Plaintiff to raise a procedural due process claim in connection

with his delayed arraignment and probable cause hearing on the state charges.  The Supreme Court

has held that state statutes may create liberty interests that are entitled to the procedural protections

of the Due Process Clause of the Fourteenth Amendment."  *Vitek v. Jones*, 445 U.S. 480, 488

(1980); *see also Walker v. Horn*, 385 F.3d 321, 328 n. 17 (3d Cir. 2004) ("State-created liberty

---

[5] Plaintiff also appears to allege a claim for municipal liability under § 1983 against the City of
Vineland and Cumberland County.  *See* Counts Twelve, Thirteen.  To do so, Plaintiff must assert
facts that plausibly establish that an official policy, practice, or custom of the City of Vineland or
Cumberland County was the "moving force" behind the alleged violation of his federal rights.
*See generally City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-90 (1989); *Polk Cty. v. Dodson*,
454 U.S. 312, 326 (1981); *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691,
(1978). It is axiomatic that, in order to state a viable § 1983 claim against a municipality, there
must be, as a predicate, a violation of the plaintiff's constitutional rights.  *Young v. City of
Chester, PA*, 764 F. App'x 262, 265 (3d Cir. 2019); *Startzell v. City of Phila.*, 533 F.3d 183, 204
(3d Cir. 2008) (citation omitted).  Here, however, Plaintiff's potential *Monell* against the City of
Vineland arising from an alleged pattern or practice of falsely accusing individuals of crimes is
likewise subject to dismissal as untimely because Plaintiff did not bring this claim within the
limitations period.  *See, e.g., Leonard v. City of Pittsburgh*, 570 F. App'x 241, 245 (3d Cir. 2014)
(declining to toll plaintiff's § 1983 claim against the City of Pittsburgh where "[t]he injuries
Leonard alleges involving the City [were] secondary to the true injury -- the actions taken by [a
Pittsburgh police officer]. Leonard knew of her injury by [the officer], and—importantly—she
knew that he was a police officer employed by the City in June 2008.  Exercising reasonable
diligence, she could have discovered at that time a potential *Monell* claim against the City.").

interests are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment."). Plaintiff alleges there was a three-month delay in his arraignment on the state charges, *see* Complaint at 33, and he contends that he did not have his first appearance on the state charges until November 19, 2014. Complaint at 38. This procedural due process claim is also plainly time barred, as it accrued in November 2014. Therefore, the procedural due process claim is dismissed as untimely as to all remaining Defendants.

Plaintiff also alleges that Defendants fabricated evidence that Plaintiff's car was at the scene of the crime and also paid Brown to make a false statement incriminating him. *See* Count Seven. An acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged. *See Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016). Here, however, the alleged fabrication of evidence occurred in July 2014, the charges were dismissed in December 2014, and Plaintiff filed this action on or about February 15, 2019, well beyond the two-year limitations period. Plaintiff has not shown that he is entitled to equitable tolling or the discovery rule on this claim. As such, the Court dismisses the fabrication of evidence claim as untimely as to all Defendants.

Byrd also appears to allege that local, state, and federal Defendants conspired to maliciously prosecute him for attempted murder. Malicious prosecution under 42 U.S.C. § 1983 requires that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of

a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)). The elements of a *Bivens* malicious prosecution tort are the same. *See Telfair v. Tandy*, Civ. No. 08-731, 2008 WL 4661697, at *10 (D.N.J. Oct. 20, 2008) (citing *Johnson*); *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343, 362 (E.D. Pa. 2012). A malicious prosecution claim accrues when the prosecution terminates without a conviction. *Coello v. DiLeo*, 43 F.4th 346, 354–55 (3d Cir. 2022)(quotations omitted) (citing *Thompson v. Clark*, 142 S.Ct. 1332, 1341 (2022)). Here, to the extent Plaintiff alleges that he was maliciously prosecuted on attempted murder charges, those claims accrued when the state charges were dropped in December 2014 and are likewise time barred. As such, the malicious prosecution claims in connection with the state charges are dismissed as untimely as to all remaining Defendants.

Plaintiff also brings claims for malicious abuse of process against the federal Defendants who allegedly framed him for the attempted murder and investigated him for the federal bank robberies. *See* Count Seventeen. "[A] section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n. 17 (3d Cir.1989) (citation omitted); *Dunne v. Township of Springfield*, 500 F. App'x. 136, 139 (3d Cir. 2012). This claim, like the claim for malicious prosecution, is time barred, as it accrued in 2014, and Plaintiff has not provided sufficient facts to warrant tolling or the discovery rule. The abuse of process claims are dismissed as untimely as to all Defendants.

Byrd also purports to bring a malicious abuse of process claim in connection with the alleged "no bill" of the attempted murder charges. Plaintiff alleges that on October 22, 2018, he received the December 17, 2014 grand jury proceedings from the state court. *See* Complaint at

44.   Plaintiff alleges that the record of that proceeding shows that he was never listed on the indictment presented to the grand jury, and therefore was not "No Billed."  *See id.*  It is not clear how these facts constitute malicious abuse of process.  Moreover, the fact that Plaintiff received the grand jury transcripts in 2018 is not a basis for tolling of this claim, as there are no facts to suggest that he could not have sought and received the transcripts earlier.  As such, the malicious abuse of process claim is dismissed for failure to state a claim for relief and as untimely as to all Defendants.

Finally, Plaintiff has asserted a number of civil rights conspiracies.  A § 1983 conspiracy claim is subject to a two-year limitations period.  *Kost v. Kozakiewicz*, 1 F.3d 176, 191 (3d Cir.1993).  "The limitations period begins to accrue in a § 1983 civil conspiracy claim on the date of each overt act causing injury to the plaintiffs."  *Wilson v. Bd. of Control of City of Harrisburg Sch. Dist.*, No. 10–0353, 2010 WL 4977056, at *5 (M.D. Pa. 2010) (citing *Kost*, 1 F.3d at 190–91); *see also Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir.1984)).  Here, Plaintiff has alleged conspiracies among the local, state, and federal Defendants to falsely arrest and imprison him, delay his first appearance, unlawfully search and seize his property, and maliciously prosecute him for attempted murder.  All of these overt acts occurred in 2014, and Plaintiff has not provided sufficient facts to suggest he is entitled to equitable tolling or the discovery rule with respect to any of these claims.  The civil rights conspiracy claims are therefore time barred and dismissed on that basis.

### 2.   The Heck Bar

In addition to the attempted murder charges, which were dropped, Plaintiff was successfully prosecuted and convicted of the federal bank robberies.  To the extent Plaintiff asserts these § 1983 and *Bivens* claims in order to impugn his <u>convictions for the federal bank robberies</u>,

his claims implicate the bar imposed by *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Supreme Court's decision in *Heck* requires the Court to assess whether a determination in Plaintiff's favor on his § 1983 and *Bivens* claims would necessarily impugn the validity of Plaintiff's federal bank robbery convictions.

In *Heck*, a state prisoner brought a § 1983 action for damages, challenging the conduct of state officials who, the prisoner claimed, had unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence.  512 U.S. at 479.  The Court pointed to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.*, at 486.  And it held that where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," *id.*, at 481–482, a § 1983 action will not lie "unless ... the conviction or sentence has already been invalidated," *id.*, at 487.  The Court then added the caveat that where the § 1983 action, "even if successful, will not demonstrate the invalidity of any outstanding criminal judgment ..., the action should be allowed to proceed." *Id.* (footnote omitted).

Here, Plaintiff alleges that the state and federal Defendants conspired to arrest and detain him on false state charges, extracted an illegal confession from him, failed to bring him before a judge, improperly seized and gathered evidence, failed to turn over evidence, and maliciously prosecuted him on state charges in order to further their federal investigation.  On appeal to the Third Circuit, Plaintiff sought to suppress his confession and set aside his federal bank robbery convictions based on these same alleged civil rights violations.  The Third Circuit rejected these arguments and affirmed his conviction and sentence.

Indeed, Plaintiff's federal claims may be barred by *Heck* even though Plaintiff seeks only damages and does not explicitly seek to invalidate his federal convictions or seek release from

confinement.  In a line of decisions, the Supreme Court has repeatedly held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement."  *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Heck*, 512 U.S. at 481; *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  He must seek federal habeas corpus relief (or appropriate state relief) instead.  Subsequently, in *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005), the Supreme Court reiterated that under *Heck*, "a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence."  As explained by the Court in *Wilkinson*, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  *Id.* at 81–82.

For these reasons, Byrd's federal claims—to the extent they also seek to undermine his federal bank robbery convictions—are barred by *Heck* and are dismissed <u>without prejudice</u> unless and until a court sets aside Byrd's federal bank robbery convictions.

### c.  The FTCA Claims

Although he has not sued the United States, Plaintiff also purports to bring a FTCA claim for negligence.  An FTCA claim for negligence against the Government must be presented to the appropriate federal agency "within two years after such claim accrues."  28 U.S.C. § 2401.  The claim accrues "when a plaintiff knows of both the existence and the cause of his injury."  *Miller v. Phila. Geriatric Center*, 463 F.3d 266, 272 (3d Cir. 2006).  The claim is "presented" (thus tolling the running of the limitations period) when an executed SF–95 and a claim for money damages in a sum certain are received by the government agency.  *See* 28 C.F.R. § 14.2.  Here, the contours

19

of Plaintiff's FTCA claim(s) are unclear, and the Court declines to speculate about the negligence claims Plaintiff is seeking to bring.  Moreover, any such claims also appear to be untimely under the two-year limitations period.  The Court dismisses the FTCA claims for failure to state a claims for relief and as untimely.

### d.  State Law Claims

Finally, the Court declines supplemental jurisdiction over any remaining state law claims, including the New Jersey Civil Rights Act ("NJCRA") and defamation claims.  Because the Court has dismissed the federal claims, the only remaining causes of action are Plaintiff's putative state law claims. The Court's sole basis for exercising subject matter jurisdiction over these claims is Congress's grant of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Absent extraordinary circumstances, a federal court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *see Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir.), cert. denied, 140 S. Ct. 563, 205 L. Ed. 2d 358 (2019).  Because no extraordinary circumstances are present in this case that would counsel in favor of this Court exercising supplemental jurisdiction, the Court will dismiss any remaining state law claims without prejudice to Plaintiff's right to pursue those claims in state court.

### IV.   <u>CONCLUSION</u>

For the reasons explained in this Memorandum Opinion, Plaintiff's IFP is granted, the § 1983, *Bivens*, and FTCA claims are dismissed for the reasons stated herein pursuant the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B).   The Court declines supplemental jurisdiction over any remaining state law claims.  An appropriate Order follows.

/s/ Freda L. Wolfson
FREDA L. WOLFSON
U.S. Chief District Judge